859 P.2d 111

**STATE of Arizona, Appellee,**

v.

**Jeffrey Timothy LANDRIGAN aka
Jeffrey Dale Page, Appellant.**

**No. CR–90–0323–AP.**

Supreme Court of Arizona.

Feb. 25, 1993.

Reconsideration Denied April 13, 1993.

2

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals

Section, Joseph T. Maziarz, Asst. Atty. Gen., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, James L. Edgar, Deputy Public Defender, John W. Rood, III, Phoenix, for appellant.

## OPINION

ZLAKET, Justice.

This is an automatic appeal from a death sentence following defendant's conviction of first degree murder. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4033 and –4035.

## FACTUAL AND PROCEDURAL BACKGROUND

Evidence at trial established that the victim's body was found in his residence on December 15, 1989. According to the testimony of a friend ("Michael"), the victim had been a promiscuous homosexual who frequently tried to "pick up" men by flashing a wad of money. This would invariably occur after he got paid. The victim told Michael that he had recently met a person named "Jeff," with whom he wanted to have sex. The victim's physical description of Jeff was later found to closely approximate defendant.

Michael received three phone calls from the victim on Wednesday, December 13, 1989. During the first, the victim said he had picked up Jeff, that they were at the apartment drinking beer, and he wanted to know whether Michael was coming over to "party." Approximately 15 minutes later, the victim called a second time and said that he was in the middle of sexual intercourse with Jeff. Shortly thereafter, the victim called to ask whether Michael could get Jeff a job. Jeff spoke with Michael about employment, and asked if he was going to come over. Michael said no. During one of these conversations, the victim indicated that he had picked up his paycheck that day.

The victim failed to show up for work the following day, and calls to him went unanswered. On Friday, a co-worker and two others went to the victim's apartment and found him dead. He was fully clothed, face down on his bed, with a pool of blood at his head. An electrical cord hung around his neck. There were facial lacerations and puncture wounds on the body. A half-eaten sandwich and a small screwdriver lay beside it. Blood smears were found in the kitchen and bathroom. Partial bloody shoeprints were on the tile floor.

Cause of death was ligature strangulation. Medical testimony at the presentence hearing indicated that the victim probably was strangled after being rendered unconscious from blows to the head with a blunt instrument.

Acquaintances testified that the apartment usually was neat. When the body was found, however, the apartment was in disarray. Drawers and closets were open; clothes and newspapers were strewn on the floor. The remnants of a Christmas present lay open and empty at the foot of the bed. In the kitchen area were two plates, two forks, a bread wrapper, luncheon meat, cheese wrappers, and an open jar of spoiled mayonnaise. A five-pound bag of sugar was spilled on the floor. A clear impression of the sole of a sneaker appeared in the sugar. Neither the paycheck nor its proceeds were located. Although the apartment had been ransacked, nothing else seemed to be missing.

When defendant first was questioned, he denied knowing the victim or ever having been to his apartment. When arrested, however, he was wearing a shirt that belonged to the victim. Seven fingerprints taken from the scene matched defendant's. The impression in the sugar matched his sneaker, down to a small cut on the sole. Tests also revealed that a small amount of blood had seeped into the sneaker. The blood matched that found on the shirt worn by the victim.

Defendant's ex-girlfriend testified that she had three telephone conversations with him in December of 1989. During one of those, defendant told her that he was "get-

ting along" in Phoenix by "robbing." Defendant placed the last call to her from jail sometime around Christmas. He said that he had "killed a guy ... with his hands" about a week before.

The jury found defendant guilty of theft, second degree burglary, and felony murder for having caused the victim's death "in the course of and in furtherance of" the burglary. The jury also determined that defendant previously had been convicted in Oklahoma of assault and battery with a deadly weapon, second degree murder, and possession of marijuana. At the time of the Arizona incident, defendant was an escapee from an Oklahoma prison.

At the sentencing hearing, the trial judge found two statutory aggravating circumstances under A.R.S. § 13–703(F): that defendant was previously convicted of a felony involving the use or threat of violence on another person; and, that defendant committed the offense in expectation of the receipt of anything of pecuniary value. In making the latter finding, the trial judge noted that the victim's apartment had been ransacked, and it appeared the culprit was looking for something.

The trial judge found no statutory mitigating circumstances sufficient to call for leniency. As for non-statutory mitigating circumstances, she identified family love and absence of premeditation. She stated, however, that the mitigating factors did not outweigh the aggravating circumstances. Defendant was sentenced to an aggravated term of 20 years on the burglary count, to six months in the county jail for theft, and to death for murder.

## MOTIONS FOR ACQUITTAL AND NEW TRIAL

Defendant argues that the trial judge erred in denying his motions for acquittal and for new trial under Rules 20 and 24, Ariz.R.Crim.P., 17 A.R.S. He claims that the evidence was insufficient to find him guilty of burglary and felony murder. We disagree.

■ A judgment of acquittal under Rule 20 is appropriate only where there is "no substantial evidence to warrant a conviction." *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). Evidence may be direct or circumstantial, *State v. Blevins*, 128 Ariz. 64, 67, 623 P.2d 853, 856 (App.1981), but if reasonable minds can differ on inferences to be drawn therefrom, the case must be submitted to the jury. *State v. Hickle*, 129 Ariz. 330, 331, 631 P.2d 112, 113 (1981). A trial judge has no discretion to enter a judgment of acquittal in such a situation.

■ Under Rule 24, a new trial is required only if the evidence was insufficient to support a finding beyond a reasonable doubt that the defendant committed the crime. *State v. Neal*, 143 Ariz. 93, 97, 692 P.2d 272, 276 (1984). Whether to grant or deny a new trial is, however, within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Hickle*, 133 Ariz. 234, 238, 650 P.2d 1216, 1220 (1982).

### A. Burglary

■ The evidence here, although circumstantial, is sufficient to uphold the burglary conviction. It supports the conclusion that defendant entered or remained in the apartment with the intent to commit a theft. A.R.S. § 13–1507(A). The fact that the victim was found on his bed fully clothed, next to a half-eaten sandwich, suggests he was killed before the apartment was ransacked. Any other conclusion would require an inference that the victim entered his apartment, found it trashed, then calmly made himself a sandwich and sat down on his bed to eat it. As the trial judge noted, the ransacked apartment indicates that the culprit was probably looking for things of value. The evidence clearly placed defendant, who admitted getting along by "robbing," and who was wearing one of the victim's shirts when arrested, in the ransacked apartment.

This case is not, as defendant argues, similar to *State v. Hill*, 12 Ariz.App. 196, 469 P.2d 88 (1970), in which the evidence showed only that the accused was present at the scene of a burglary. In *Hill*, unlike here, no evidence linked defendant to the crime itself. *Id.* at 197, 469 P.2d at 89.

Since reasonable minds could differ on the inferences to be drawn, the trial judge properly denied the Rule 20 motion. Additionally, because the verdict on the burglary count was not contrary to the weight of the evidence, the trial judge did not abuse her discretion in denying the Rule 24 motion.

B. Murder

■■■ On the charge of felony murder, it was for the jury to decide whether defendant committed or attempted to commit burglary in the second degree and, in the course of and in furtherance of that crime, caused the victim's death. A.R.S. § 13–1105(A)(2); *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983). As noted above, the record contains substantial evidence to support the burglary conviction. Additionally, defendant admitted to his ex-girlfriend that he killed a man about a week before December 23rd, and the blood on his shoe matched that on the victim's shirt.

Defendant's reliance on *State v. Lopez*, 158 Ariz. 258, 762 P.2d 545 (1988), is misplaced. In *Lopez*, this court concluded that a felony murder conviction could not stand because the evidence did not support the elements of the underlying armed robbery (the coexistence of intent to commit robbery with the use of force). The evidence showed only that defendant and his brother took the victim's car and wallet to leave the scene and delay detection of the victim's identity. *Id.* at 264, 762 P.2d at 551.

The record here contains much more. The trial judge could not properly have granted defendant's motion for acquittal, nor did she abuse her discretion in denying the motion for new trial.

## INSTRUCTION ON LESSER DEGREES OF HOMICIDE

■ Defendant next argues, citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), that the trial judge's failure to *sua sponte* instruct the jury on lesser degrees of homicide—second degree murder or manslaughter—deprived him of a fair trial by forcing the jury to convict him of first degree murder or "set ... him free." Defendant failed to request any lesser homicide instruction at trial, but contends that the failure to instruct was fundamental error.

We find no error here, fundamental or otherwise. In *Beck*, the United States Supreme Court invalidated an Alabama statute prohibiting the judge in a capital case from instructing the jury on lesser included offenses, even though the evidence supported such instruction. The Court reasoned:

[W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

447 U.S. at 637, 100 S.Ct. at 2389, 65 L.Ed.2d at 402–03. Thus, the fundamental concern in *Beck* was that a jury—convinced that the defendant had committed some violent crime, but unsure that he was guilty of a capital crime—might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all. *Schad v. Arizona*, —— U.S. ——, ——, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555, 574 (1991). In Arizona, however, there is no lesser included homicide offense to the crime of felony murder, because the necessary *mens rea* is supplied by the intent required for the underlying felony. *State v. Arias*, 131 Ariz. 441, 641 P.2d 1285 (1982); *Schad*, —— U.S. at —— n. 5, 111 S.Ct. at 2512 n. 5, 115 L.Ed.2d at 584 n. 5 (1991) (White, J., dissenting).

**6**

■ . Defendant argues that the evidence warranted a manslaughter or second degree murder instruction. He claims to have placed a telephone call to his mother around December 12th or 13th in which he told her he was bleeding from his ears, nose, and rectum. He asserts the jury could have concluded from this evidence that he was injured during sex and killed the victim in response "upon a sudden quarrel or heat of passion."

Even if we construe his mother's highly equivocal testimony on this point in a light most favorable to defendant, the evidence is insufficient to support a finding that he killed the victim during a sudden quarrel or the heat of passion, or in response to injuries inflicted on him during sex. *Beck* does not require a trial court to instruct on a lesser offense that is unsupported by the evidence. Therefore, the failure to have done so in this case was not error. *See State v. LaGrand*, 153 Ariz. 21, 30, 734 P.2d 563, 572 (1987). *See also State v. Arias*, 131 Ariz. at 443–44, 641 P.2d at 1287–88 (1982) (*Beck* does not apply because Arizona law differs significantly from Alabama law).

## EQUAL PROTECTION

■ Defendant's next argument, that the failure to have a jury decide the existence of aggravating circumstances violated his equal protection rights, also lacks merit. The Sixth Amendment does not require that a jury make findings of aggravating and mitigating circumstances before the death penalty is imposed. *Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511, 524 (1990). Sentencing factors—as opposed to the elements of an offense—may be found by the court at the sentencing hearing. *State v. Hurley*, 154 Ariz. 124, 130, 741 P.2d 257, 263 (1987). We find no constitutional violation. *See Clark v. Ricketts*, 958 F.2d 851, 859 (9th Cir.1992) (federal equal protection clause does not require that a jury find the aggravating circumstances supporting a death sentence).

## EIGHTH AMENDMENT

Defendant argues that Arizona's death penalty scheme, taken as a whole, violates the Eighth Amendment by failing to "sufficiently channel the sentencer's discretion." We recently rejected this argument in *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) (Arizona's death penalty statute narrowly defines the class of death-eligible defendants). Likewise, defendant's suggestion that Arizona's aggravating circumstances are too broad to be meaningful is without substance.

## AGGRAVATING AND MITIGATING CIRCUMSTANCES

■ We have independently reviewed the record to determine the presence or absence of aggravating and mitigating circumstances, and the propriety of the death penalty. *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976). Defendant claims the record does not support a finding that the murder was committed with the expectation of the receipt of anything of pecuniary value, pursuant to A.R.S. § 13–703(F)(5).

We disagree. Not only is the actual receipt of money or valuables not required to find the expectation of pecuniary gain, *State v. LaGrand*, 153 Ariz. 21, 36, 734 P.2d 563, 578 (1987), but here defendant was convicted of theft and burglary on evidence we have deemed sufficient. Defendant admitted he was getting money by robbing. The victim, who was pursuing defendant as a sexual partner, was an obvious target. The apartment was ransacked. The killing hardly appears to have been unexpected or accidental. *See State v. Nash*, 143 Ariz. 392, 405, 694 P.2d 222, 235 (1985) (unexpected or accidental death during course of or flight from robbery will not support aggravating circumstance of pecuniary gain). Physical and testimonial evidence supports the finding that pecuniary consideration was a cause, not merely a result, of the murder. *LaGrand*, 153 Ariz. at 35, 734 P.2d at 577 ("When the defendant comes to rob, the defendant expects pecuniary gain and this desire infects all other conduct of the defendant").

The record also supports the finding of a second aggravating circumstance, that defendant previously was convicted of a felony involving the use or threat of violence on another person under A.R.S. § 13–703(F)(2). *See* Okla.Stat. tit. 21, §§ 641, 642, 645 (1971) (assault and battery with a dangerous weapon). Defendant on appeal does not contest this finding. The state produced certified public records from Oklahoma, and its expert matched defendant's fingerprints with those on the records.

We also agree that the record does not present mitigating evidence sufficiently substantial to call for leniency. The trial judge properly rejected defendant's suggestion that intoxication was a mitigating circumstance under A.R.S. § 13–703(G)(1). The only evidence on this subject was testimony from the friend who said the victim called and told him that he and Jeff were drinking beer. There was no evidence that defendant was impaired, that he did not have the capacity to appreciate the wrongfulness of his conduct, or that he could not conform his conduct to the requirements of the law.

### THE DEATH SENTENCE

Defendant argues that imposing the death sentence was unwarranted because the trial judge found the crime "not out of the ordinary when considering first degree murders." The judge determined, however, that while the crime was not out of the ordinary, defendant clearly was. She said:

... Mr. Landrigan appears to be somewhat of an exceptional human being. It appears that Mr. Landrigan is a person who has no scruples and no regard for human life and human beings and the right to live and enjoy life to the best of their ability, whatever their chosen lifestyle might be. Mr. Landrigan appears to be an amoral person.

Defendant's comments in the courtroom support these conclusions. At the sentencing hearing, he offered the following soliloquy:

Yeah. I'd like to point out a few things about how I feel about the way this [expletive], this whole scenario went down. I think that it's pretty [expletive-]ing ridiculous to let a fagot (sic) be the one to determine my fate, about how they come across in his defense, about I was supposedly [expletive]ing this dude. This never happened. I think the whole thing stinks. I think if you want to give me the death penalty, just bring it right on. I'm ready for it.

Defendant made additional statements during the hearing. When his counsel attempted to characterize the prior second degree murder as self-defense, defendant interjected:

THE DEFENDANT: See, also, Your Honor, there's a few things he got wrong here again. I'd like to clear them up.

THE COURT: Please do, Mr. Landrigan.

THE DEFENDANT: When we left the trailer, [the victim] went out of the trailer first. My wife was between us. I pulled my knife out, then I was the one who pushed her aside and jumped him and stabbed him. He didn't grab me. I stabbed him.

In attempting to explain the aggravated assault committed by defendant while in prison on this prior murder charge, defense counsel claimed that his client had been threatened by the person he assaulted, allegedly a friend of the murder victim's father. Defendant once more took issue with his lawyer:

THE DEFENDANT: Yeah, something else that was just said about the guy that was in prison. That wasn't [the murder victim's] dad's friend or nothing like that. It was a guy I got in an argument with. I stabbed him 14 times. It was lucky he lived. But two weeks later they found him hung in his cell. He was dead. It wasn't nothing like it was presented.

The best we can say for this defendant is that he was forthright. His comments demonstrate a lack of remorse that unfavorably distinguishes him from other defendants and supports imposition of this

severe penalty. *See State v. Fierro*, 166 Ariz. 539, 548, 804 P.2d 72, 81 (1990) ("We will not uphold imposition of the death penalty unless either the murder or the defendant differs from the norm of first degree murders or defendants").

## ASSISTANCE OF COUNSEL

■ Finally, defendant argues that his trial counsel deprived him of effective assistance by instructing the probation officer not to interview defendant in preparation for the aggravation/mitigation hearing. On direct appeal, we will not reverse a conviction on ineffective assistance grounds absent an evidentiary hearing below. *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Here, no hearing occurred because defendant moved to dismiss his petition for post-conviction relief. The trial judge granted that motion. We address the issue now only because "we may clearly determine from the record that the ineffective assistance claim is meritless." *Id.*

■ To establish ineffective assistance of counsel, defendant must prove that (1) counsel lacked minimal competence as determined by prevailing professional norms, and (2) counsel's deficient performance prejudiced the defense. *Carver*, 160 Ariz. at 174, 771 P.2d at 1389. Whether counsel's actions are reasonable may be determined or substantially influenced by the defendant's own statements or actions. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984).

■ At the sentencing hearing, defendant instructed his lawyer not to present any mitigating evidence. He prohibited his ex-wife and mother from testifying in his behalf, and they honored his wishes. Over defendant's objections, his attorney stated on the record what he thought those witnesses would say, specifically that defendant had a past history of substance abuse, that his mother had abused drugs when pregnant with him, that he was supporting a family, and that his prior murder conviction involved elements of self-defense. As previously indicated, defendant interjected with a more inculpatory version of that prior killing.

■ Counsel's instruction to the probation officer was clearly within the wide range of professionally competent assistance, given defendant's stated desire not to have mitigating evidence presented in his behalf, and his tendency to volunteer damaging statements like those made to the trial judge at the hearing. Contrary to defendant's argument, this case is not like *State v. Smith*, 136 Ariz. 273, 665 P.2d 995 (1983). The defendant in *Smith* would have testified in mitigation that he did not intentionally shoot the victim, but for erroneous legal advice from his counsel as to the admissibility of such statements in any subsequent legal proceeding. We held that "advising a client incorrectly about the black letter Rules of Criminal Procedure, especially in a matter of life and death," was not "minimally competent representation." *Id.* at 279, 665 P.2d at 1001.

This case does not present such a situation. In his comments, defendant not only failed to show remorse or offer mitigating evidence, but he flaunted his menacing behavior. On this record it is reasonable to assume that had defendant been interviewed, it would not have been to his benefit. There is no showing of incompetence or prejudice.

In view of the majority holding in *State v. Salazar*, 173 Ariz. 399, 416–417, 844 P.2d 566, 583–584 (1992), we have not conducted a proportionality review. We have, however, reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, and found none. Defendant's convictions and sentences are affirmed.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.