IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG -7 2009

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA, )
                                    )          2 CA-CR 2008-0240
                    Appellee,       )          DEPARTMENT A
                                    )
        v.                          )          O P I N I O N
                                    )
JAVIER FIMBRES,                     )
                                    )
                    Appellant.      )
_____   )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20072875

Honorable Michael J. Cruikshank, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
 By Kent E. Cattani and Jonathan Bass                            Tucson
                                                    Attorneys for Appellee


Isabel G. Garcia, Pima County Legal Defender
 By Scott A. Martin                                             Tucson
                                                    Attorneys for Appellant

H O W A R D, Chief Judge.

¶1        After a jury trial, appellant Javier Fimbres was convicted of three counts of

forgery of a credit card, one count of theft of items with a market value of more than $2,000,

three counts of computer tampering, and one count of fraudulent scheme and artifice. He was sentenced to multiple concurrent prison terms, the longest of which was 4.5 years. On appeal, Fimbres argues the state presented insufficient evidence to support several of his convictions. He also contends his right to due process was violated because the trial court instructed the jury on an uncharged offense of credit card forgery. For the following reasons, we affirm.

**Facts**

¶2        "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). Fimbres purchased merchandise at local stores using gift cards that had been altered so that the information encoded in magnetic strips on the backs of the cards corresponded with the numbers of various credit and debit cards. These credit and debit cards belonged to people other than Fimbres, and Fimbres did not have permission to use the cards or access the underlying accounts. During several of the transactions, he presented other cards that were declined before presenting one that was accepted.

¶3        Fimbres was apprehended on July 13, 2007. At trial, the state presented evidence that unauthorized transactions had been made on several victims' credit card and debit accounts. Surveillance cameras from the stores showed Fimbres using the gift cards. Fimbres also admitted having made the purchases with the cards but claimed he did not know the cards had been altered. The jury found Fimbres guilty of all charges.

**Insufficiency of the Evidence**

¶4        Fimbres argues the evidence was insufficient to support his convictions for fraudulent scheme and artifice, computer tampering, and two counts of credit card forgery. He also contends insufficient evidence was presented to prove that he was guilty of theft of items valued at $2,000 or more.[1]   When considering claims of insufficient evidence, "we view the evidence in the light most favorable to sustaining the verdict and reverse only if no substantial evidence supports the conviction." *State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005).   Substantial evidence is "evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913-14 (2005), *quoting State v. Hughes*, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997).   "Evidence may be direct or circumstantial, but if reasonable minds can differ on inferences to be drawn therefrom, the case must be submitted to the jury." *State v. Landrigan*, 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993) (citation omitted).   "The finder-of-fact, not the appellate court, weighs the evidence and determines the credibility of witnesses." *State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995).

Fraudulent Scheme and Artifice Conviction

¶5        Fimbres first contends the evidence was insufficient to support his conviction for fraudulent scheme and artifice because the state failed to show that he "obtained a benefit

---

[1]Although Fimbres appears to have moved for judgment of acquittal on some of the counts he now challenges, he did not make a motion on all of them.  Any claim on those omitted counts is therefore forfeited absent fundamental error. *See State v. Stroud*, 209 Ariz. 410, n.2, 103 P.3d 912, 914 n.2 (2005).  However, a conviction that is not supported by sufficient evidence does constitute fundamental error. *Id.*

3

by means of a false pretense or representation." To convict a defendant of a fraudulent scheme or artifice pursuant to A.R.S. § 13-2310, the state must prove, inter alia, that the defendant obtained a benefit "by means of false or fraudulent pretenses, representations, promises or material omissions." § 13-2310(A); *see also State v. Johnson*, 179 Ariz. 375, 378, 880 P.2d 132, 135 (1994) (additional element of false or fraudulent pretenses "separates fraud[ulent scheme and artifice] from routine theft").

¶6        Fimbres argues there was "no evidence that he created any pretense, misrepresented himself, or concealed anything from the [store] cashiers." In support of this argument, Fimbres states that he presented his "Arizona Identification Card" to the store cashiers when requested and "signed his own name when prompted" by the store's credit systems.

¶7        But evidence was presented from which the jury could conclude that Fimbres did obtain a benefit through misrepresentation or false pretense. Fimbres testified that he had used what appeared to be valid store gift cards to purchase goods from the stores. By doing so, he represented that the cards were valid. And a police officer testified that the cards were not valid and instead had been illegally altered to correspond to various credit card and debit accounts that did not belong to Fimbres. Accordingly, there was sufficient evidence from which the jury could infer Fimbres had falsely represented that his store gift cards were legitimate rather than illegally altered.

¶8        Fimbres claims, however, that he thought the cards were valid and therefore did not misrepresent that he was using legitimate gift cards. But this is not an issue of

4

sufficiency of the evidence, but of Fimbres's credibility. "That was a matter for the jury to resolve, and we will not disturb its conclusions." *State v. Lee*, 151 Ariz. 428, 429, 728 P.2d 298, 299 (App. 1986).

¶9 The two cases Fimbres cites in support of his argument do not require a different conclusion. In *Johnson*, 179 Ariz. at 376, 380-81, 880 P.2d at 133, 137-38, our supreme court held the evidence was insufficient to support the defendant's fraudulent scheme and artifice conviction because the defendant did not misrepresent anything when he or his accomplice used a valid card to access a valid account, but used the commodity purchased improperly. As discussed, however, Fimbres did in fact use false pretenses and misrepresentation when he obtained goods from various stores using gift cards bearing the victims' credit card and debit account information. In *State v. Louden*, 127 Ariz. 249, 251, 619 P.2d 758, 760 (App. 1980), *quoting* former A.R.S. § 13-312, the court relied on language proscribing any "'trick or deception . . . or . . . confidence game'" in interpreting the relevant statute. And the statute under which Fimbres was convicted contains no such language. *See* § 13-2310.

¶10 At oral argument, Fimbres also emphasized that his conduct was covered by A.R.S. § 13-2105, fraudulent use of a credit card, a misdemeanor or a class five or six felony, and argued that the legislature therefore intended that he be prosecuted and punished under this more lenient statute rather than § 13-2310, which punishes violations as a class two felony. But he was unable to cite any authority supporting his position and we are not aware of any. There is authority, however, that a crime may be made punishable under different

5

statutes.  *See* A.R.S. § 13-116 (act punishable in different ways by different sections of the laws may be punished under both, but sentences must be concurrent).  Accordingly, the existence of two statutes criminalizing the same conduct does not evidence a legislative intent that the offense only be punished under the more lenient of the two.

Computer Tampering Convictions

**¶11**         Fimbres also argues that the state presented insufficient evidence to support his convictions for computer tampering pursuant to A.R.S. § 13-2316.  He contends that the plain meaning of § 13-2316 demonstrates the statute was enacted solely to criminalize "computer hacking" and does not encompass other computer-related conduct such as swiping through a credit card reader store gift cards encoded with illegally obtained credit and debit card numbers.  Fimbres therefore claims that the evidence presented cannot possibly support a computer-tampering conviction.

**¶12**         When construing a statute, "[o]ur task . . . is to fulfill the intent of the legislature that wrote it."  *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993).  In interpreting the legislature's intent, we "look first to the statute's language because we expect it to be 'the best and most reliable index of the statute's meaning.'" *Id.*, *quoting Janson v. Christenson*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).  "We give clear and unambiguous statutory language its plain and ordinary meaning unless absurd consequences would result."  *State v. Hasson*, 217 Ariz. 559, ¶ 11, 177 P.3d 301, 304 (App. 2008).

6

¶13     The plain meaning of § 13-2316 is clear and unambiguous and demonstrates that the statute is not limited to the crime of computer hacking. Section 13-2316(A) provides:

> A person who acts without authority or who exceeds authorization of use commits computer tampering by . . . [a]ccessing, altering, damaging or destroying any computer, computer system or network, or any part of a computer, computer system or network, with the intent to devise or execute any scheme or artifice to defraud or deceive, or to control property or services by means of false or fraudulent pretenses, representations or promises.

"Accessing" a computer system with intent to defraud is a far broader prohibition than "computer hacking." And Fimbres's actions here fall within that prohibition.

¶14     For a store's credit card reader to charge or debit customers' accounts, the reader must necessarily be linked to the store's computer system or network. A defendant who swipes gift cards bearing illegally obtained credit and debit card numbers in a store credit card reader therefore accesses the store's computer system or network with the intent to execute a scheme to defraud. *See State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983) (evidence sufficient to support conviction under § 13-2316 where defendant stole victim's debit card and used it in automated teller machine to withdraw money from victim's bank account).[2] Accordingly, § 13-2316 encompasses Fimbres's conduct.

_____

[2]Although Fimbres acknowledges the holding in *Gillies*, he contends *Gillies* was "wrongly decided" and is therefore inapplicable. He also argues that *Gillies* was published simply because it was a death penalty case and claims that, "if the supreme court were to actually accept review on th[e issue in *Gillies*] and subject it to meaningful analysis, its decision would be different." We reject Fimbres's suggestion that noncapital issues in capital cases do not receive "meaningful analysis." Furthermore, "[t]his court is bound by

7

**¶15** Fimbres argues, however, that even if § 13-2316 "encompasses the . . . use of the card swiping machine," the evidence was still insufficient to support his convictions on counts four and five because no witness testified that his use of the cards was unauthorized on the dates alleged in these counts. Circumstantial evidence was presented, however, from which the jury could conclude that Fimbres used a store computer system to make unauthorized charges to a Visa card account on July 13, 2007, as alleged in count five of the indictment. *See Landrigan*, 176 Ariz. at 4, 859 P.2d at 114 (evidence can be direct or circumstantial). A store security specialist testified that Fimbres had used a Visa card to purchase $581.43 worth of goods on July 13, 2007. S.W. also testified that his Visa card was charged $581.43 on that date and that the charge was unauthorized. This constitutes substantial evidence from which the jurors could conclude beyond a reasonable doubt that Fimbres had used a store computer system to make unauthorized charges to a Visa card account on July 13, 2007, as alleged in count five of the indictment. *See Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d at 913-14.

**¶16** Substantial evidence was also presented to support Fimbres's conviction for computer tampering on June 1, 2007—as alleged in count four. A store security specialist testified that Fimbres used MasterCard number "9221" to purchase a video game system for

the decisions of the supreme court and has 'no authority to overrule, modify, or disregard them.'" *State v. Miranda*, 198 Ariz. 426, ¶ 13, 10 P.3d 1213, 1216 (App. 2000), *approved*, 200 Ariz. 67, 22 P.3d 506 (2001), *quoting State v. Thompson*, 194 Ariz. 295, ¶ 20, 981 P.2d 595, 598 (App. 1999).

$648.59 on June 1. And victim A.M. testified that she incurred an unauthorized charge of $648.59 on her MasterCard in early June.

¶17 The evidence also showed that Fimbres used multiple altered cards on several occasions over the course of several months and, if one was refused, simply offered another. And other victims besides A.M. testified that their cards were used without authorization and the video game system purchased on this occasion was the same type of merchandise purchased on several other occasions.

¶18 Additionally, as the state noted at oral argument in this court, this evidence should be viewed in light of the other evidence at trial, including Fimbres's own testimony. Fimbres expressly admitted in opening and closing statements through counsel that the cards he presented were altered and used without authorization; he only contested his knowledge of the alteration. Although arguments of counsel are not evidence, *State v. Grounds*, 128 Ariz. 14, 15, 623 P.2d 803, 804 (1981), in this case they provide further context for understanding Fimbres's own testimony. When Fimbres testified that he did not know the cards he used were altered, he implicitly admitted that the cards were in fact altered and that he was not authorized to use them.[3] Fimbres only disputed his lack of authorization at the time he made his purchases.

¶19 A.M. also testified, however, that her MasterCard was number "3704" rather than "9221." Although the difference in credit card numbers in this count is troublesome, and the state should have cleared up this obvious deficiency in its case, the time period and

---

[3]Specifically, Fimbres was asked "you knew . . . the gift cards you were presenting, that they were false. Is that true?" He replied, "No, I did not know it."

9

amount matched exactly and the jury could have found that either the victim or the security specialist mis-spoke. *See State v. Dugan*, 125 Ariz. 194, 196, 608 P.2d 771, 773 (1980) (jury may believe part of testimony). Accordingly, sufficient evidence was presented from which jurors could conclude that Fimbres used a store computer to make unauthorized charges to a MasterCard account on June 1, 2007, as alleged in count four of the indictment. *See Landrigan*, 176 Ariz. at 4, 859 P.2d at 114 ("[I]f reasonable minds can differ on inferences to be drawn therefrom, the case must be submitted to the jury.").

Forgery of a Credit Card

¶20 Fimbres next contends the state presented insufficient evidence to support his convictions for forgery of a credit card in counts seven and eight. As relevant here, a defendant commits forgery of a credit card if he or she is not the cardholder and, with the intent to defraud, "signs the name of any actual or fictitious person to a credit card or instrument for the payment of money which evidences a credit card transaction" or "utters" a credit card without express authorization from an issuer to do so. A.R.S. § 13-2104(A)(1), (2).

¶21 Fimbres testified that he "signed for" every purchase he made using the altered gift cards. To make a purchase with an altered card, Fimbres necessarily would have had to present, or utter, the card. And although he denied having made the purchases with an intent to defraud, we defer to the jury's assessment of his credibility and the weight to be given to his testimony. *See Cid*, 181 Ariz. at 500, 892 P.2d at 220 ("The finder-of-fact . . . weighs the evidence and determines the credibility of witnesses."). We conclude the evidence presented

was sufficient to support the jury's finding that Fimbres uttered a card and subsequently signed the name of a person with intent to defraud.

¶22 Fimbres also argues, however, that "in counts seven and eight there was insufficient evidence that the card[s he] used belonged to anyone else or that [he] was not authorized to use those cards." Count eight refers to the same transaction alleged in count five as computer tampering, which occurred on July 13, 2007. And count seven refers to the same transaction alleged in count four as computer tampering, which occurred on June 1, 2007. We have already explained that a reasonable jury could conclude that Fimbres was not the holder of the Visa card he used in making unauthorized charges to S.W.'s account on July 13, as alleged in count eight. And we have also explained that a reasonable jury could conclude Fimbres was not the holder of the MasterCard he used in making unauthorized charges on June 1, as alleged in count seven. Moreover, Fimbres testified he had presented a card and subsequently signed for each transaction, including transactions on July 13 and June 1. We therefore affirm his convictions on these counts.

Theft Convictions

¶23 Fimbres finally argues that the state presented insufficient evidence to prove he was guilty of theft of items valued at $2,000 or more. Section 13-1802(E), A.R.S., provides as follows:

> Theft of property or services with a value of two thousand dollars or more but less than three thousand dollars is a class 5 felony. Theft of property or services with a value of one thousand dollars or more but less than two thousand dollars is a class 6 felony.

With respect to a theft conviction, if the record does not contain substantial evidence to show the fair market value of the property stolen, there is insufficient evidence to support the theft classification, and fundamental error results. *Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d at 913-14; *State v. Rushing*, 156 Ariz. 1, 4, 749 P.2d 910, 913 (1988).

¶24       Fimbres was convicted of theft of property valued at more than $2,000—a class five felony. At trial, the state alleged that Fimbres's transactions in aggregate totaled $2,494.99. Fimbres argues, however, that insufficient evidence was presented to prove that two of the transactions—$648.59 on June 1 and $582.43 on July 13—were unauthorized. He therefore claims that both $648.59 and $582.43 should be subtracted from the state's alleged total of $2,494.99—equaling $1,263.97, a class six rather than class five felony.

¶25       We have already explained, however, that sufficient evidence was presented to prove that Fimbres's June 1 and July 13 transactions were unauthorized. The same analysis applies to the theft conviction. We therefore affirm Fimbres's conviction for theft of items valued at $2,000 or more.

**Validity of Convictions for Credit Card Forgery**

¶26       Fimbres also claims that his convictions for credit card forgery violate his right to due process because the superior court lacked subject matter jurisdiction over them. Citing *State v. Mikels*, 119 Ariz. 561, 582 P.2d 651 (App. 1978), Fimbres contends that it is unclear whether he was convicted under A.R.S. § 13-2104(A)(1) or (2) and argues the trial court therefore "did not have [subject matter] jurisdiction to enter judgment[s of conviction for credit card forgery pursuant to] § 13-2104(A)(1)" because he was not indicted under that

12

specific subsection of the statute. Even though Fimbres did not raise this issue below,[4] subject matter jurisdiction can be raised at any point in the proceedings. *See State v. Buckley*, 153 Ariz. 91, 93, 734 P.2d 1047, 1049 (App. 1987) (defects in subject matter jurisdiction may be contested at any time, including on appeal).

**¶27** We review this issue de novo. *See State v. Flores*, 218 Ariz. 407, ¶ 6, 188 P.3d 706, 708-09 (App. 2008).[5] Fimbres was indicted for credit card forgery pursuant to § 13-2104(A)(2), but the trial court instructed the jury sua sponte that it could find Fimbres guilty not only pursuant to § 13-2104(A)(2), as indicted, but also for altering a credit card or manufacturing or uttering a fraudulently altered credit card, pursuant to § 13-2104(A)(1). This action effectively amended the indictment to conform to the evidence. *See State v. Delgado*, 174 Ariz. 252, 254, 848 P.2d 337, 339 (App. 1993) (jury instruction served to effectively amend indictment); Ariz. R. Crim. P. 13.5(b) (permitting amendment of indictment in certain circumstances).

---

[4]Although Fimbres apparently objected to the instruction's including language about manufacturing and altering a credit card, he did not object based on the lack of such language in the indictment or an alleged lack of subject matter jurisdiction.

[5]The court in *Flores*, 218 Ariz. 407, ¶ 6, 188 P.3d at 708-09, applied a de novo standard even though the issue of subject matter jurisdiction had not been raised in the trial court during the taking of the defendant's guilty plea. In *State v. Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d 233, 236 (2009), however, our supreme court affirmed the principle that issues not raised in the trial court are generally forfeited absent fundamental error. But *Valverde* did not involve an issue of subject matter jurisdiction. And, because being convicted of a crime when the trial court did not have subject matter jurisdiction would be a denial of due process, *see State v. Rockerfeller*, 117 Ariz. 151, 153, 571 P.2d 297, 299 (App. 1977), such a conviction would usually result in fundamental, prejudicial error. *See State v. Flowers*, 159 Ariz. 469, 472, 768 P.2d 201, 204 (App. 1989) (where defendant denied due process, "such denial constitutes fundamental error").

13

¶28 In *State v. Smith*, 66 Ariz. 376, 379, 189 P.2d 205, 207 (1948), our supreme court indicated that the sufficiency of an indictment is an issue of subject matter jurisdiction. The court stated that "in a criminal case the court acquires no jurisdiction of the subject matter of an alleged offense unless the jurisdictional facts constituting the offense are set forth in the information." *Id.* In that case, the information failed to allege that the subject car accident happened on a public highway, which was an element of the offense of leaving the scene of an accident. The supreme court therefore determined that the indictment did not allege a public offense and the trial court lacked jurisdiction. *Id.*

¶29 More recent authority, however, calls into question whether this issue now would be treated as one of subject matter jurisdiction. *See State v. Maldonado*, No. 1 CA-CR 07-0837, ¶ 13, 2009 WL 1298991 (Ariz. Ct. App. May 12, 2009); *Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) ("[T]he word 'jurisdiction' means different things in different contexts" and has been used "imprecise[ly]."). "Subject matter jurisdiction is 'the power of a court to hear and determine a controversy.'" *State v. Bryant*, 219 Ariz. 514, ¶ 14, 200 P.3d 1011, 1014 (App. 2008), *quoting Marks v. LaBerge*, 146 Ariz. 12, 15, 703 P.2d 559, 562 (App. 1985). Article VI, § 14(4) of the Arizona Constitution—which establishes the superior court and its jurisdiction—grants the superior court subject matter jurisdiction of "[c]riminal cases amounting to felony." Thus, because credit card forgery is a felony, § 13-2104(B), the constitution confers subject matter jurisdiction on the superior court to hear cases involving that crime.

14

**¶30** *Smith* did not discuss article VI in reaching its decision and instead relied upon article II, § 30. Article II is entitled "Declaration of Rights." Unlike article VI, article II, § 30 does not establish the trial court's jurisdiction and instead states that "[n]o person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment; no person shall be prosecuted for felony by information without having had a preliminary hearing before a magistrate or having waived such preliminary examination." Thus, the placement of the section and its plain language seem to confer personal rights on the defendant rather than to limit the subject matter jurisdiction of the court.

**¶31** Furthermore, article II, § 30 allows a defendant to waive a preliminary hearing, whereas subject matter jurisdiction can neither be waived nor conferred by the parties. *See Flores*, 218 Ariz. 407, ¶ 6, 188 P.3d at 709 ("subject matter jurisdiction cannot be waived"); *Kadera v. Superior Court*, 187 Ariz. 557, 562, 931 P.2d 1067, 1072 (App. 1996) ("Arizona law has established that parties may not confer subject matter jurisdiction on a court that it does not otherwise have."). Additionally, courts have determined that defects in indictments and informations do not require reversal if the defendant had adequate notice. *See Maldonado*, 2009 WL 1298991, ¶ 15; *State v. Sowards*, 147 Ariz. 185, 191, 709 P.2d 542, 548 (App. 1984); *State v. Puryear*, 121 Ariz. 359, 362, 590 P.2d 475, 478 (App. 1979). In contrast, a lack of subject matter jurisdiction cannot be cured by other notice of the offense charged. *See Parker v. Uchida*, 14 Ariz. 57, 60, 125 P. 715, 716 (1912) (as general rule, defects in subject matter jurisdiction cannot be cured); *see also United States v. Cotton*, 535

15

U.S. 625, 631 (2002) (failure to allege essential element in indictment not jurisdictional; if not objected to at trial, review only for plain error). This line of cases also supports the proposition that the application of article II, § 30, since *Smith*, has been consistent with the creation of a personal right rather than a limitation on subject matter jurisdiction.

¶32　　　　　In any event, the original indictment here undoubtedly states the elements of a felony offense—credit card forgery under § 13-2104(A)(2). Consequently, the original indictment invoked the subject matter jurisdiction of the trial court. *See Buckley*, 153 Ariz. at 93, 734 P.2d at 1049 (filing of information required to confer subject matter jurisdiction on trial court); *see also State v. Jones*, 101 P.3d 699, 701-02 (Idaho 2004) ("[s]ubject matter jurisdiction in a criminal case is conferred by the filing" of an indictment).

¶33　　　　　Fimbres's argument that the trial court lacked subject matter jurisdiction is therefore necessarily limited to the validity of the court's amendment of the indictment. But, as we have already explained, subject matter jurisdiction is established when the indictment is filed, *see Buckley*, 153 Ariz. at 93, 734 P.2d at 1049, and, once established, cannot be lost as the result of later events. *Cf. State v. Howell*, 107 Ariz. 300, 301, 486 P.2d 782, 783 (1971) (subject matter "[j]urisdiction depends upon the state of affairs existing at the time it is invoked, and once having attached is not lost by subsequent events") (citation omitted); *see also Fry v. Garcia*, 213 Ariz. 70, ¶ 10, 138 P.3d 1197, 1200 (App. 2006) (jurisdiction established when lawsuit filed and cannot be lost as result of later events or actions). And *Smith*, 66 Ariz. at 379, 189 P.2d at 207, does not discuss the jurisdictional effects of an amendment to an indictment and therefore provides no guidance on this subject. We

conclude that the amendment of the indictment does not raise an issue of subject matter jurisdiction and may, therefore, only be reviewed for fundamental or structural error. *See State v. Valverde*, 220 Ariz. 582, ¶¶ 10, 12, 208 P.3d 233, 235-36 (2009); *see also State v. Rybolt*, 133 Ariz. 276, 278-79, 650 P.2d 1258, 1260-61 (App. 1982) (claim not raised at trial that jury instructions impermissibly amended an indictment reviewed for fundamental error), *overruled on other grounds by State v. Diaz*, 142 Ariz. 119, 688 P.2d 1011 (1984).[6]

**¶34**   Fimbres contends that being convicted of a unindicted offense under subsection A(1) violated his due process rights, constituting either structural or fundamental error. That occurred, he claims, because the trial court instructed the jury on both subsections.

**¶35**   In *Valverde*, our supreme court explained the differences between structural error and fundamental error review. 220 Ariz. 582, ¶¶ 10, 12, 208 P.3d at 235-36. Structural error involves a deprivation of a basic protection necessary for the trial to serve as a vehicle for determination of guilt or innocence. *Id.* ¶ 10. And if a reviewing court finds structural error has occurred, "prejudice is presumed." *Id.* Fundamental error, on the other hand, requires a deprivation of a right essential to the defense and must be "'error of such magnitude the defendant could not have received a fair trial.'" *Id.* ¶ 12, *quoting State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). Unlike structural error in which

---

[6]Fimbres claims that this argument was preserved, but his objection below was limited to the wording of the instruction and was not based on any variance between the indictment and the instruction. The error is therefore subject to either fundamental or structural error review. *See Valverde*, 220 Ariz. 582, ¶¶ 10, 12, 208 P.3d at 235-36.

prejudice is presumed, the defendant bears the burden of showing prejudice in a fundamental error analysis. *Id.*

¶36 Fimbres claims the error was structural because it "permeated and tainted the entire trial framework." But Fimbres neglects to explain how such permeation and taint occurred. Further Fimbres's alleged error does not fall within the same category of cases that have been found to be structural error. *See Valverde*, 220 Ariz. 582, n.2, 208 P.3d at 236 n.2 (structural error occurred when trial judge biased; when criminal defendant completely denied counsel; when criminal defendant denied opportunity of self-representation; when reasonable doubt jury instructions defective; when criminal defendant denied public criminal trial, etc.); *see also Neder v. United States*, 527 U.S. 1, 8-9 (1999) (instructional error on element of offense not structural error). Rather, the alleged error involved at best an issue of notice which did not affect the determination of Fimbres's guilt. *See Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d at 235 (structural error involves deprivation of protection necessary to determine guilt or innocence). Accordingly, no structural error occurred and we review only for fundamental error.

¶37 As we have already explained, prejudice is not presumed under this standard of review. *See Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236. Fimbres bears the burden of establishing that the trial court erred, that the error was fundamental, and that the error caused him prejudice. *See Henderson*, 210 Ariz. 561, ¶ 22, 115 P.3d at 608.

¶38 We first review the trial court's instructions amending Fimbres's indictment for error. Pursuant to Rule 13.5(b), a trial court may amend an indictment to "correct

18

mistakes of fact or remedy formal or technical defects." An amendment corrects a formal or technical defect, and is therefore permissible, if it does not change "the nature of the offense charged or prejudice[] the defendant in any way." *State v. Sanders*, 205 Ariz. 208, ¶ 19, 68 P.3d 434, 440 (App. 2003). An amendment changes the nature of the offense charged if it "propose[s] a change in factual allegations or a change in the legal description of the elements of the offense." *Id.* ¶ 25.

¶39 In *Sanders*, the defendant was initially indicted for assault of a police officer pursuant to A.R.S. § 13-1203(A)(3). 205 Ariz. 208, ¶ 5, 68 P.3d at 438. "The elements of this offense include a showing that defendant knew he touched the officer and that his intention in doing so was to injure, insult or provoke." *Id.* ¶ 31. The indictment was later amended, however, to charge the defendant with assault under a different subsection of the statute, § 13-1203(A)(2). *Sanders*, 205 Ariz. 208, ¶¶ 9-10, 68 P.3d at 438. The elements of that offense require that the defendant "intentionally placed the officer in reasonable apprehension of imminent physical injury . . . [and] require[] a showing of an intent on the part of the defendant to create fear of injury." *Id.* ¶ 32. The *Sanders* court concluded that §§ 13-1203(A)(3) and 13-1203(A)(2) had different elements and were therefore "distinctly different crimes." 205 Ariz. 208, ¶ 33, 68 P.3d at 442-43. Hence, the court concluded the amendment was impermissible because it "changed the nature of the originally charged offense." *Id.*

¶40 Here, the initial indictment charged Fimbres with credit card forgery pursuant to § 13-2104(A)(2), which requires that the defendant sign the name of any person for a

purchase on a credit card of which he is not the holder. But, as the trial court stated, the amended indictment permitted the jury to find Fimbres guilty of altering or manufacturing a credit card under an accomplice theory of liability. Any manufacturing or alteration would have necessarily occurred at a distinctly different time and place than signing for a purchase and would therefore change the original indictment's factual allegations. And even if the acts Fimbres committed establish accomplice liability in the manufacturing of the altered cards, that change would be improper. Accordingly, as in *Sanders*, the court erred in amending Fimbres's indictment because the amendment changed the nature of the offense originally charged.[7]

**¶41** Even though Fimbres has shown the trial court erred, he still has the burden of showing such error to be fundamental. *See Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607 (to prevail on a fundamental error review, defendant must show error was fundamental). Error is fundamental if it goes "'to the foundation of the case . . . [or] takes from the defendant a right essential to his defense.'" *Id.* ¶ 19, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). Fimbres admitted at trial that he had made the purchases alleged with the altered cards and only denied having the intent to defraud—a required element under either subsection of § 13-2104(A). If the jury had believed Fimbres that he had not intended to defraud, it would have found him not guilty under either subsection of the statute. Even though the court's amendment was error, such error was not "'error going

---

[7]The parties have not argued and we do not decide today whether § 13-2104(A)(1) and (2) describe different crimes or a unitary crime under *State v. Forrester*, 134 Ariz. 444, 447-48, 657 P.2d 432, 435-36 (App. 1992).

to the foundation of the case,'" or "'error that takes from the defendant a right essential to his defense'" and cannot be classified as fundamental. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607, *quoting Hunter*, 142 Ariz. at 90, 688 P.2d at 982.

**¶42** Furthermore, even if Fimbres could have shown the trial court's jury instructions to be fundamental error, he still has the burden of showing resulting prejudice. *Id.* ¶ 22. Fimbres relies on *Sanders*, however, in which Division One stated that, if an amendment to an indictment changes the nature of the offense originally charged, "prejudice inheres in the amendment and is conclusively presumed." 205 Ariz. 208, ¶ 20, 68 P.3d at 440. But the defendant in *Sanders* had objected to the amended indictment below, while Fimbres did not. *Id.* ¶ 10. And, in *Valverde*, 220 Ariz. 582, ¶ 14, 208 P.3d at 236-37, our supreme court rejected the court of appeals' conclusion that prejudice may inevitably occur in a fundamental error analysis, stating that such a conclusion conflated fundamental error with structural error. Rather, the *Valverde* court concluded that prejudice is a fact-intensive inquiry in each case. *Id.* ¶ 12. And Fimbres has not shown structural error, so we may not presume prejudice.

**¶43** In determining whether Fimbres has shown prejudice, we note he did not request an interrogatory verdict on the credit card forgery counts, which would have required the jury to specify which subsection of § 13-2104(A) it found he had violated. Therefore, Fimbres cannot demonstrate that the jury found him guilty under § 13-2104(A)(1) and cannot meet his burden of showing prejudice. Additionally, overwhelming evidence supports the conclusion that Fimbres committed credit card forgery under the subsection charged in the

21

indictment. *See* § 13-2104(A)(2); *State v. Gallegos*, 178 Ariz. 1, 11, 870 P.2d 1097, 1107 (1994) (no prejudice when "[o]verwhelming evidence in the record" of defendant's guilt).

**¶44** This case is akin to *State v. Delgado*, 174 Ariz. 252, 848 P.2d 337 (App. 1993). In that case, the indictment alleged the defendant had recklessly attempted to commit second-degree murder, an offense not recognized in Arizona. *Id.* at 254, 848 P.2d at 339. The trial court granted the state's motion to amend the indictment to conform to the evidence of intentional commission of attempted second-degree murder and instructed the jury pursuant to the amendment. *Id.* On appeal, Delgado claimed the amendment was improper, but this court found the issue waived because it had not been raised below. *Id.* at 254, 255, 848 P.2d at 339, 340. We also found no error because the defendant had not been deprived of adequate notice and an opportunity to defend. *Id.* at 255, 848 P.2d at 340.

**¶45** In any event, the record here demonstrates that Fimbres was found guilty as indicted. The jury's verdict on count six states that it found Fimbres "guilty of the offense of forgery of a credit card . . . *as alleged in Count Six of the Indictment*." (Emphasis added.) The verdict on count eight similarly states the jury found Fimbres guilty of forgery of a credit card "*as alleged in Count Eight of the Indictment*." (Emphasis added.) Both the prosecutor in closing argument and the trial court in instructing the jury made clear that there are two separate subsections—(A)(1) and (A)(2)—of the credit card forgery statute. And each juror was provided with a copy of the indictment that showed Fimbres was charged under § 13-2104(A)(2) and the charge mirrored its language. Because the jurors were instructed that § 13-2104 has two parts, because each juror was given a copy of the indictment showing that

22

Fimbres was charged only under subsection (A)(2), and because the jury's verdicts stated it found Fimbres guilty "as alleged . . . in . . . the indictment," the record supports the conclusion that Fimbres was found guilty of credit card forgery pursuant to the subsection charged in the indictment. Additionally, the prosecutor did not emphasize or seek conviction under § 13-2104(A)(1). *See Valverde*, 220 Ariz. ¶¶ 16-17, 208 P.3d at 236 ("In assessing the impact of an erroneous instruction, we . . . consider the attorneys' statements to the jury."). Therefore, even though the court erred in instructing the jury, the error was neither fundamental nor prejudicial, and we affirm Fimbres's convictions for credit card forgery.

### Conclusion

**¶46**     In light of the foregoing, we conclude that sufficient evidence supported Fimbres's convictions. We also conclude that the trial court's jury instructions did not violate Fimbres's right to due process. We therefore affirm Fimbres's convictions and sentences.

_____

JOSEPH W. HOWARD, Chief Judge

CONCURRING:


_____

PHILIP G. ESPINOSA, Presiding Judge


_____

JOHN PELANDER, Judge


23