NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL L. CHAMBERS, *Appellant.*

No. 1 CA-CR 20-0579
FILED 2-10-2022

Appeal from the Superior Court in Maricopa County
No.  CR2014-128634-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Vice Chief Judge David B. Gass joined.

---

**P A T O N**, Judge:

**¶1**        Michael L. Chambers appeals from the superior court's denial of his motion for mistrial.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In May 2014, fourteen-year-old J.D.[1] told a school counselor that approximately one month earlier, she and her younger cousin, J.B., were sitting in Chambers's car when Chambers showed them a pornographic video.  The video depicted a naked girl sitting on a bathtub, shaving her legs and vagina.  J.D. thought the naked girl in the video might be related to Chambers.  A valid search of Chambers's phone revealed the video J.D. described.  Based on the video incident, the State charged Chambers with two counts of furnishing obscene materials to a minor.  Based on additional information from J.D. and J.B., the State also charged Chambers with two counts of sexual abuse, one count of child molestation, and one count of attempted child molestation.

**¶3**        At Chambers's first trial in September 2015, J.D. and J.B. both testified that Chambers showed them a pornographic video he claimed to have filmed of his stepdaughter.  J.D. described the girl in the video as naked, with long black hair, sitting on the bathtub shaving her legs and vagina.  J.B. testified the video depicted a girl with her hair wrapped in a towel, "pretty much shaving her legs."   The video appeared to be a surreptitious recording because the girl was suddenly interrupted by a noise at the door and replied to a person named "Mikey."

**¶4**        Each victim testified about the identity of the two people in the video.  J.D. believed the man in the video was Chambers, saying "I know for sure that it was [Chambers] in the video because I know his voice and he's in the video."   J.B., who had met Chambers's stepdaughter,

---

[1] We use initials to protect the privacy of the victims.

believed the girl in the video to be her, describing her as "tall" with "dark hair." J.D. had never met Chambers's stepdaughter. J.D. and J.B. both testified they did not know Chambers did not actually film the video but instead downloaded it onto his phone from the internet.

¶5        When Detective N. testified, the State asked her if she was concerned about another potential victim based on J.D. and J.B.'s reports that Chambers had recorded a video of his stepdaughter. The following exchange ensued:

> Q: Based upon your interview with [J.B.] and [J.D.] and this video, did you have any concerns about another victim?
>
> A: Yes, I did.
>
> Q: As a result of that, did you do any further investigation into who that victim may have been?
>
> A: I did.
>
> Q: And what did you do?
>
> A: I conducted a records check on the residen[ce] of Mr. Chambers and I found that there was a young lady who was 19 years old –
>
> Mr. Clark: Objection, Judge. Relevance.
>
> The Court: Sustained.
>
> . . . .
>
> Q: After you do this records check, do you get information from Detective H[.]?
>
> A: Yes.
>
> Q: Based upon that information that you got from Detective H[.], were your concerns about another victim alleviated?
>
> A: Yes.

¶6        Chambers moved for a mistrial based on Detective N.'s testimony about "another victim." Outside the jury's presence, the State argued that Detective N.'s testimony was relevant and showed that the

police had followed up on the allegation that Chambers surreptitiously filmed his nude stepdaughter, about which the jury had heard both girls testify. The State explained that "Detective N[.] was just expressing that she learned of this other person, but this other person wasn't who [J.B.] and [J.D.] were telling her it was."

¶7　　　　In response, Chambers conceded that "ultimately, Judge, I do know, because we're going to have [Detective H.] here, that I'm going to be able to clear up this video mess that we have because [Chambers] downloads [the video]. [Detective H.] writes a report about it . . . But that doesn't unring the bell with the 19-year-old. So, if nothing else, Judge, I would like to have some type of limiting instruction."

¶8　　　　After addressing and hearing arguments regarding Chambers's mistrial motion, the court issued a limiting instruction to the jury:

> You heard some testimony about a reference to a female who may have been about 19 years old who lived at the defendant's residence. This instruction is that you are not to consider that in your deliberations in any way. There was no other investigation. There were no other alleged victims in this case.

¶9　　　　The jury in the first trial convicted Chambers of two counts of furnishing obscene materials or harmful items to a minor. It acquitted him of attempted molestation of a child (count 6) and could not reach a verdict on the counts of sexual abuse (counts 1 and 2) and molestation of a child (count 5). In 2020, the State retried Chambers on one count of sexual abuse and one count of child molestation. The second jury was unable to reach a verdict on sexual abuse but acquitted Chambers on the child molestation count. The State did not seek any further retrial. The superior court sentenced Chambers on the two counts of furnishing obscene materials to a minor in November 2020. Chambers timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶10　　　　A declaration of a mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Moody*, 208 Ariz. 424, 456, ¶ 126 (2004) (citation and internal quotation marks omitted). We give great deference to the superior court's denial of a

mistrial because "[it] is in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000); *see State v. Adamson*, 136 Ariz. 250, 262 (1983). We review the superior court's ruling for an abuse of discretion. *Jones*, 197 Ariz. at 304, ¶ 32 (citation omitted).

**¶11** The superior court considers two factors in deciding whether to grant a mistrial based on a witness's testimony: "(1) whether the testimony called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the testimony influenced the jurors." *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003) (citing *State v. Bailey*, 160 Ariz. 277, 279 (1989)). A superior court's denial of a motion for mistrial will only be reversed if it is "palpably improper and clearly injurious." *State v. Murray*, 184 Ariz. 9, 35 (1995) (citation and internal quotation marks omitted).

**¶12** Here, the superior court did not abuse its discretion by issuing a limiting instruction instead of granting a mistrial because Detective N.'s testimony was not "palpably improper and clearly injurious" to Chambers. *See id.* The jury had already heard from both the State and Chambers during opening statements that J.D. and J.B. believed Chambers filmed the video of his stepdaughter but that the evidence revealed the video was downloaded commercially and not filmed by Chambers. Additionally, without any objection from Chambers, J.D. and J.B. testified that Chambers showed them a video he claimed to have recorded of his stepdaughter, and Chambers cross-examined both girls about the video. Thus, by the time Detective N. testified, the jurors had heard about the girl in the video multiple times, and Detective N.'s testimony confirmed there was not another potential victim, presumably Chambers's stepdaughter.

**¶13** Further, when arguing his mistrial motion, Chambers's attorney admitted he intended to elicit similar testimony from Detective H. to "clear up this video mess that we have." Detective H. later testified that the video was downloaded from a commercial website. Therefore, the testimony did not draw the jury's attention to another potential victim but clarified that the police investigated J.D. and J.B.'s report and concluded there was not another victim.

**¶14** Additionally, there is no likelihood that Detective N.'s testimony improperly influenced the jurors. In addition to Detective N.'s testimony confirming there were no other victims in the case, the superior court instructed the jury that there were no other victims, which eliminated

any reasonable probability the jury was improperly influenced. *See State v. LeBlanc*, 186 Ariz. 437, 439 (1996) (explaining that "[j]urors are presumed to follow instructions.") (citation omitted).

**¶15**     The jury acquitted Chambers of the attempted molestation charge and could not reach a verdict on the molestation and sex abuse charges. Acquitting Chambers on one charge, not reaching a verdict on three others, but convicting on the remaining two charges demonstrates that the jury carefully evaluated the evidence presented. *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (the decision to acquit a defendant of certain charges "demonstrate[s] the jury's careful and proper consideration of the evidence.") (citation omitted); *see also State v. Fimbres*, 222 Ariz. 293, 297, ¶ 4 (App. 2009) (explaining that "[the jury], not the appellate court, weighs the evidence and determines the credibility of witnesses.") (citation omitted).

**¶16**     For these reasons, the superior court did not abuse its discretion in denying Chambers's motion for mistrial.

### CONCLUSION

**¶17**     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA

6