631 P.2d 112

STATE of Arizona, Appellant, Cross-Appellee,

v.

Michael M. HICKLE, Appellee, Cross-Appellant.

No. 5157.

Supreme Court of Arizona, In Banc.

June 19, 1981.

Rehearing Denied July 21, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellant, cross-appellee.

Van Baalen Law Offices by Richard T. Weissman, Phoenix, for appellee, cross-appellant.

CAMERON, Justice.

This is an appeal by the State challenging the trial court's grant of a new trial for the defendant, following a jury verdict of guilty to first degree murder. The defendant cross-appealed raising some six questions. During oral argument to this court defendant abandoned all but one of the six issues. We take jurisdiction under Rule 47(e)(2), Rules of the Supreme Court, 17A A.R.S.

We need decide, then, only two questions:

1. Did the trial court err in denying defendant's motion for a directed verdict of acquittal?

2. Did the trial court err in granting defendant's motion for a new trial?

The facts pertinent to this appeal are as follows. On 22 August 1978, Donald "Jackie" Boulduc, the victim, gave a ride to a hitchhiker, Everett Scrivner, who was fifteen years old. Boulduc and Scrivner consumed a "six pack" of beer, and Boulduc asked Scrivner if he had any friends who would like to "party." They then made stops at two homes for friends of Scrivner, Benny Escobar and Mike Hickle, the defendant. Escobar was eighteen and Hickle was nineteen years old.

The four went to Scrivner's home where they drank more beer with Scrivner's parents. Boulduc and Scrivner went into a bedroom. After a few minutes, Scrivner left the bedroom and told Hickle to go in to talk to Boulduc. At this time Scrivner said that he planned to rob Boulduc. Boulduc was wearing turquoise jewelry and had money in his wallet. It is not clear whether Hickle heard this comment, but Escobar and Scrivner's parents discouraged the idea.

Scrivner, Escobar, Hickle and Boulduc left in Boulduc's truck to continue "partying" at Estrella Park. A substantial

amount of beer was consumed by the four throughout the day. During the ride to the Park, Boulduc made sexual suggestions and sexually fondled Scrivner and Hickle. This angered Scrivner and during a stop at a restroom, he told Escobar and Hickle that he would kill Boulduc. After parking near a canal bank in Estrella Park, Boulduc and Scrivner left the other two and Boulduc attempted to perform fellatio on Scrivner but Scrivner rebuffed him. Boulduc told Scrivner to send Hickle to him. When Hickle arrived, Boulduc performed fellatio on Hickle and may have attempted sodomy as well. At some point, Hickle called to his friends in what was described as a "scared" voice. Escobar grabbed a tire iron from the truck and Scrivner picked up a 4″ by 4″ wooden board. Hickle hit Boulduc on the forehead with a rock which caused Boulduc to fall backwards away from Hickle. Escobar and Scrivner began beating the victim on and about the head. At trial, Scrivner testified that Hickle also hit the victim with the tire iron and kicked him. After inflicting several severe blows, the three assailants pushed the still conscious victim into the canal. Boulduc clung to brush on the canal bank until either Hickle or Scrivner threw a large rock at Boulduc striking him on the head and causing him to lose his grasp and float down the canal. His body was found the following day. Death was attributed to severe head injuries.

Scrivner, Escobar and Hickle took the victim's money, jewelry and truck. They later abandoned the truck near the White Tank Mountains, hitchhiked back into Phoenix, and reported to the police the following day.

Scrivner entered into a plea agreement in which he agreed to testify against Hickle and be treated as a juvenile. He was placed in custody in Adobe Mountain School. Escobar also agreed to testify against Hickle and received a 20 year sentence.

The State presented two theories of first degree murder, murder with premeditation and felony murder occurring in the course of a robbery. Defendant's motions for a directed verdict of acquittal made at the close of the State's case and at the end of the trial were denied. The jury, on 4 June 1979, convicted the defendant of first degree murder.

The defendant, on 14 June 1979, made a timely motion for a new trial under Rule 24.1, Rules of Criminal Procedure, 17 A.R.S. which was denied on 18 June. On 25 July, a second motion was made, denominated "Motion for New Trial and Request for Evidentiary Hearing and Alternatively Motion to Continue Sentence for a period of Thirty (30) Days." The motion was made in part on the basis of "new discovered evidence" which was that Scrivner had "told a fellow inmate—at Adobe Mountain that he had lied on the stand."

Following an evidentiary hearing conducted on 4 September 1979, the court granted defendant's motion for a new trial. In a 2½ page order, the trial judge stated that the State had failed to prove either premeditation or antecedent criminal intent to rob required to sustain a first degree murder conviction under the theories advanced by the State, and therefore the verdict of first degree murder was contrary to the weight of the evidence. The State appealed from the ruling of the trial court in granting a new trial, and the defendant cross-appealed alleging as error the denial of defendant's motion for directed verdict.

### DIRECTED VERDICT OF ACQUITTAL

Defendant asserts that the trial court erred in denying his motion for a directed verdict of acquittal made at the close of the State's case and at the conclusion of the trial. Not only is it proper to deny a motion for a directed verdict when evidence raises a question of fact for the jury and the evidence, which, if believed, would be sufficient to sustain a conviction. *State v. Jones*, 125 Ariz. 417, 610 P.2d 51 (1980), but it can be error to grant a motion for directed verdict when the evidence is such that reasonable minds could differ on the inferences to be drawn therefrom. *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978). In a jury trial, the credibility of witnesses and

weight to be given their testimony are to be determined by the jury and not by the judge. *State v. Pieck*, 111 Ariz. 318, 529 P.2d 217 (1974).

In the present case, the victim was beaten to death and the defendant was present at the scene of the killing. There was some evidence that the defendant's first move against the victim was in self defense. The testimony of Scrivner and Escobar, the key witnesses, conflicted on the defendant's participation, with Scrivner placing substantially greater blame on the defendant than Escobar did. The court instructed on both murder and manslaughter.

■ We find that the evidence which was presented at the trial was such that reasonable minds could differ on the inferences to be drawn therefrom, and it was not error to deny defendant's motion for a directed verdict of acquittal. *State v. Mosley*, supra.

### NEW TRIAL MOTION

■ Rule 24.1, supra, provides that a motion for new trial "shall be made no later than 10 days after the verdict has been rendered." Rule 24.1(b). We have held the time limits for filing a motion for new trial to be jurisdictional. *State v. Hill*, 85 Ariz. 49, 330 P.2d 1088 (1958). Defendant's first motion for a new trial was made within ten days after rendition of the verdict and was therefore timely under Rule 24.1, supra. This motion was denied. The second motion "for new trial" filed 25 July 1979 was not timely, and the trial court had no jurisdiction to grant a new trial based upon Rule 24.1, supra; *State v. Hill*, supra. The trial court then erred in granting defendant's second motion for new trial.

This does not mean, however, that the defendant is foreclosed from relief. In addition to a motion for new trial made within 10 days after verdict, defendant may also move to vacate judgment "no later than 60 days after the entry of judgment and sentence * * *." Rule 24.2, Rules of Criminal Procedure, 17 A.R.S. Subsection (a)(2) of Rule 24.2 specifically provides that a grounds for such motion may be newly discovered evidence. In the instant case, the judgment and sentence have not been entered so the motion pursuant to Rule 24.2 is premature. Actually, defendant's motion made before judgment and sentence was more in the nature of a motion in arrest of judgment. This motion, allowable by Rule 315, Rules of Criminal Procedure (1956), could be made to "abate" judgment and sentence that had not as yet been entered. The New Rules of Criminal Procedure adopted in 1973 abolished the motion in arrest of judgment, and Rule 24.2 may not be used for that purpose. As the Comment to Rule 24.2(a) states:

> "The motion in arrest of judgment is abolished in these rules as a separate procedural device."

Defendant's other avenue for relief could be based on Rule 32, Rules of Criminal Procedure, 17 A.R.S., "other post-conviction relief." While it has been held that on a timely motion for new trial the court may consider as grounds matters that are more properly reserved for post-conviction relief pursuant to Rule 32, *State v. Mann*, 117 Ariz. 517, 573 P.2d 917 (App.1977), the motion itself must be timely made.

In the instant case, the motion for new trial was not timely made, and the grounds for the motion, even if recognizable under Rules 24.2 or 32, cannot be considered as the motion itself may not be considered. Since the matters raised by defendant, particularly newly discovered evidence, could not be considered by the trial court because the trial court did not have jurisdiction to hear the motion, there is no waiver of the right to have the matters heard as part of a timely motion, either pursuant to Rule 24.2 or Rule 32.

Order granting the motion for new trial set aside and the matter remanded for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.