650 P.2d 1216

**STATE of Arizona,
Appellant/Cross-Appellee,**

v.

**Michael M. HICKLE,
Appellee/Cross-Appellant.**

No. 5157–2.

Supreme Court of Arizona,
In Banc.

July 29, 1982.
Rehearing Denied Sept. 14, 1982.

236

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey, and Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellant/cross-appellee.

Van Baalen Law Offices by Richard T. Weissman, Phoenix, for appellee/cross-appellant.

CAMERON, Justice.

This is an appeal by the State from the granting of defendant's motion to vacate judgment, and the granting of a new trial. Defendant cross-appeals, alleging a new trial would violate his right to be free from double jeopardy. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4032.

The parties present the following issues on appeal:

1. Did the trial court abuse its discretion in vacating judgment and granting a new trial on the basis of newly discovered evidence?

2. Would a retrial violate defendant's double jeopardy rights under the United States and Arizona Constitutions?

The facts necessary to a determination of these issues are as follows. On the morning of 22 August 1978, 15-year-old Everett Scrivner was hitchhiking in Maricopa County, Arizona, when he was picked up by the victim, Donald "Jackie" Boulduc. They consumed a six-pack of beer, then went to pick up two of Scrivner's friends, Benny Escobar and the defendant, Michael M. Hickle. Escobar was eighteen and the defendant was nineteen years old.

The four proceeded to the home of Scrivner's parents, where they drank more beer which had been purchased by the victim. At some point, Scrivner announced that he was going to rob the victim, but his companions discouraged the idea. It is not clear whether defendant heard the comments, but there is some testimony that defendant also announced his intention to rob the victim.

Scrivner, Escobar, defendant, and the victim left for Estrella Park in the victim's truck. They continued drinking. During the ride, the victim made sexual suggestions and sexually fondled defendant and Scrivner. This angered Scrivner, and during a stop at a restroom, he told Escobar and defendant that he would kill the victim. According to Scrivner's testimony, defendant said that he would help. The group drove to a canal bank in the Park and parked the truck. The victim and Scrivner wandered off and the victim attempted to perform fellatio on Scrivner, but Scrivner rebuffed him. The victim then told Scrivner to send defendant to him. Apparently, the victim performed fellatio and may have attempted sodomy on defendant. Defendant called to his companions. Escobar grabbed a tire iron from the truck and Scrivner picked up a 4" by 4" wooden board. When they came upon defendant and the victim, the defendant appeared to be struggling. When he saw his companions, defendant struck the victim in the head with a rock. The victim fell backwards, and Scrivner and Escobar began beating him on and about the head. There is testimony that defendant also kicked the victim and hit him with rocks and the tire iron. Scrivner and defendant dragged the victim to the canal. They stopped to take his watch, belt, and money, then pushed the victim into the canal. The victim clung to some brush along the side of the canal until defendant or Scrivner threw a last rock which hit him in the head, causing him to lose consciousness and float down the canal. Death was attributed to severe head injuries.

Scrivner, Escobar, and defendant took the victim's truck which they later abandoned near the White Tank Mountains and hitchhiked back into Phoenix. They reported to the police the following day.

Scrivner entered into a plea agreement in which he agreed to testify against defendant and be treated as a juvenile. He was placed in custody in Adobe Mountain School. Escobar also agreed to testify against defendant and received a 20 year sentence.

The State presented two theories of first degree murder: murder with premeditation and felony-murder occurring in the course of a robbery. The jury was also instructed on second degree murder and manslaughter. Following a jury verdict of guilty of first degree murder, defendant moved for a new trial pursuant to Rule 24.1, Arizona Rules of Criminal Procedure, 17 A.R.S. The motion was denied. The defense then moved for a new trial on the basis of newly discovered evidence. The trial court granted the motion. On appeal, we vacated, holding that the motion was untimely and that the trial court was without jurisdiction to grant or deny it. *State v. Hickle,* 129 Ariz. 330, 631 P.2d 112 (1981). We noted, however, that the defendant was not foreclosed from relief, and that a motion to vacate judgment pursuant to Rule 24.2, Arizona Rules of Criminal Procedure, 17 A.R.S., or a motion for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S., would be proper. *State v. Hickle,* supra. Upon remand, defendant was sentenced to imprisonment for life without the possibility of parole for 25 years. The defendant then moved to vacate judgment on the basis of newly discovered evidence, pursuant to Rules 24.2 and 32.1, Arizona Rules of Criminal Procedure, 17 A.R.S. The trial court granted the motion and ordered a new trial. The State appeals and the defendant cross-appeals.

## NEW TRIAL

The trial court found that Everett Scrivner's recanted testimony was newly discovered evidence which would have probably affected the verdict had it been known at trial. The court granted the defense motion to vacate pursuant to Rule 24.2, supra. The State urges that this was an abuse of discretion. We do not agree.

A motion to vacate may be granted on the basis of newly discovered evidence. Rule 24.2, supra. As provided by Rule 24.2(a)(2), newly discovered evidence is evaluated under the standard of Rule 32.1(e), Arizona Rules of Criminal Procedure, 17 A.R.S., which states:

"Rule 32.1 Scope of remedy

"Subject to the limitations of Rule 32.2, any person who has been convicted of, or sentenced for, a criminal offense may, without payment of any fee, institute a proceeding to secure appropriate relief on the ground or grounds that:

\*　　\*　　\*　　\*　　\*　　\*

"e. Newly-discovered material facts exist, which the court, after considering

(1) The probability that such facts, if introduced would have changed the verdict, finding or sentence;

(2) The diligence which would have been required to discover and produce the evidence at trial;

(3) The promptness with which the petitioner has commenced a proceeding after discovery of such facts,

"may require that the conviction or sentence be vacated;"

At trial, Scrivner's testimony that the defendant struck the victim with the "last rock" was used by the State to show defendant's participation in the beating of the victim after defendant had delivered the initial blow. From it, the State urged the jury to infer premeditation . and that the murder had been committed during the course of the robbery.

At the hearing on the motion for new trial, Everett Scrivner stated that he might have lied at trial. He indicated that he had been confused while testifying and that there were parts of the crime that he did not remember. Other witnesses testified at the hearing that Scrivner had told them in confidence that he had lied at the trial. Specifically, the witnesses stated that Scrivner had told them it was he, and not defendant, who had thrown the last rock which had caused the victim to loosen his hold on the brush and float down the canal. Scrivner's testimony, however, was not consistent. At the post-conviction hearing, Scrivner stated that he had testified at trial to the best of his recollection, would give the same testimony again, and that to the best of his recollection, defendant threw the last rock. This testimony was disputed by

other witnesses at the post-conviction hearing.

We agree with the trial court that evidence indicating Scrivner lied at trial qualifies as "newly discovered material facts" pursuant to Rule 32.1, supra. Considering the importance of Scrivner to the State's case, the trial judge, after listening to Scrivner's testimony, could find that the new evidence would probably have changed the verdict. Rule 32.1(e), Arizona Rules of Criminal Procedure, 17 A.R.S. Although we recognize that recanted testimony is not favored as being "inherently unreliable," the trial judge is still in the best position to evaluate its credibility and effect.

"This is not to say that a new trial may never be granted on recanted testimony. The credibility of the recanted evidence is a controlling factor which can best be made in the court that heard the original testimony. In the absence of an abuse of discretion, the trial court's decision on recanted testimony will not be disturbed on appeal." *State v. Sims,* 99 Ariz. 302, 310, 409 P.2d 17, 22 (1965), cert. denied 384 U.S. 980, 86 S.Ct. 1880, 16 L.Ed.2d 691 (1966). See also *State v. Scott,* 113 Ariz. 423, 555 P.2d 1117 (1976).

The evidence was raised promptly upon being discovered by the defense. Rule 32.1(e)(3), supra. The newly discovered evidence in the form of recanted testimony could not have been discovered with the exercise of due diligence prior to trial. Rule 32.1(e)(3), supra. The grant or denial of a new trial is within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion affirmatively appears. *State v. Salinas,* 129 Ariz. 364, 631 P.2d 519 (1981). The granting of the new trial was not an abuse of discretion. *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046, cert. denied 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980).

The State, however, urges that a new trial was improperly granted because the evidence of Scrivner's perjury could not have changed the verdict. It contends that, regardless of whether defendant threw the last rock, defendant is guilty of first degree murder as an accomplice. We do not agree. Admittedly, if the defendant did not throw the last rock, he could be an accomplice pursuant to A.R.S. §§ 13-301 and 13-303. But to prove accomplice liability, the State must show that Hickle participated or aided the planning or commission of the crime of murder. His presence at the scene of the crime is not necessarily enough. A.R.S. §§ 13-301 and 13-303. We have stated:

"Unquestionably, in the absence of pre-concert, the mere presence of a person at the time and place of a crime does not make an aider, abettor or principal." *State v. Sims,* supra, 99 Ariz. at 308, 409 P.2d at 20 (1965). See also *State v. (Raymond) Tison,* 129 Ariz. 526, 633 P.2d 335 (1981).

The evidence presented is conflicting as to defendant's prior intention to rob the victim and to the extent of defendant's participation in the beating of the victim after defendant delivered the first blow, allegedly in self defense. If defendant threw the last rock, it would add substance to the State's theory that the defendant acted in concert with others to rob and kill the victim. A resolution of Scrivner's conflicting testimony as to who threw the last rock is therefore vital in determining whether the defendant can be held criminally responsible, either as a principal or an accomplice. Under such circumstances, we cannot say that the trial court abused its discretion in granting the motion for new trial.

Similarly, we disagree with the State's contention that who threw the last rock is immaterial in determining premeditated murder. We do not know whether or not the jury relied on premeditation or the felony-murder rule in finding the defendant guilty of first degree murder. Also, the evidence suggests that the defendant's first blow may have been in self defense. The evidence of the ensuing acts, from which one might infer premeditation, is in conflict. Without the "last rock" testimony, we cannot say that there is a probability that the jury would have reached the same verdict. Rule 32.1(e)(1), Arizona Rules of Criminal Procedure, 17 A.R.S.

We find no error in setting aside the judgment on the basis of newly discovered evidence pursuant to Rules 24.2 and 32.1, supra.

## DOUBLE JEOPARDY

After defendant's initial motion for a new trial was denied, defendant then reasserted his motion for new trial which was granted by the trial judge for the reason of insufficiency of the evidence to sustain a conviction for first degree murder. The State appealed. We set aside the order, finding that the second motion for new trial was not timely and that the trial court was therefore without jurisdiction to grant it. See Rule 24.1(b), Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Hill,* 85 Ariz. 49, 330 P.2d 1088 (1958).

■ Defendant urges that, because the trial judge had originally granted a new trial on the basis of insufficiency of the evidence to sustain a verdict of first degree murder, a retrial would violate the double jeopardy clause of the United States and Arizona Constitutions. U.S.Const. amend. V; Arizona Const. art. 2, § 10; *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *State v. Moya,* 129 Ariz. 64, 628 P.2d 947 (1981).

We do not agree for two reasons. First, the trial court's order, in which it granted the first motion for new trial for insufficiency of the evidence, was entered without the jurisdictional power to do so and is thus void. *State v. Hickle,* supra. Being a void order, it is of no force and effect and may not be a basis of a double jeopardy bar.

Second, in our review of the record, we do not believe the evidence was in fact insufficient to go to the jury on first degree murder. Admittedly, the trial court, in its order of 4 September 1979, stated that the testimony was "insufficient to support a first degree murder conviction," and that "there is no credible, clear evidence that defendant premeditated on the killing." We believe, however, that the trial court was incorrect in its conclusion as to insufficiency of the evidence, and that, at the most, the verdict was against the weight of the evidence. From a review of the record, had the State appealed from the granting of a new trial, A.R.S. § 13–4032(1), based upon insufficient evidence, we would have been forced to reverse because there was sufficient evidence upon which defendant could be convicted of first degree murder, as indeed the trial court inferred when it denied defendant's first motion for new trial. The difference between insufficiency of the evidence and weight of the evidence in considering the question of double jeopardy has recently been discussed by the United States Supreme Court:

"* * * when a reversal rests upon the ground that the prosecution has failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause bars the prosecutor from making a second attempt at conviction.

As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence. (citation omitted) * * *

A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. * * * " *Tibbs v. Florida,* —— U.S. ——, ——, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (1982).

Because there was sufficient evidence to go the jury on the question of first degree murder, there is no double jeopardy bar to a new trial. *Tibbs,* supra.

Order vacating judgment and granting a new trial affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and FELDMAN, J., concur.

HAYS, Justice, concurring.

I concur in the result.