NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE DILLON D.

No. 1 CA-JV 14-0219
FILED 2-10-2015

Appeal from the Superior Court in Navajo County
No.  S0900JV201400010
The Honorable Michala M. Ruechel, Judge

**REVERSED**

COUNSEL

Navajo County Attorney's Office, Holbrook
By Galen Wilkes
*Counsel for Appellee*

Emery K. La Barge, Attorney At Law, Snowflake
By Emery K. La Barge
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris joined.  Judge Randall M. Howe specially concurred.

**D O W N I E**, Judge:

**¶1**          Dillon D. ("Juvenile") appeals his delinquency adjudication for child molestation.  For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Juvenile's half-brother, M.L., reportedly made statements during a family gathering that led to a criminal investigation.  Detective B. interviewed M.L., who stated Juvenile had touched him inappropriately.  M.L. also alleged Juvenile had inappropriately touched half-sister A.L.[1]

**¶3**          The State filed a four-count delinquency petition, alleging: (1) sexual conduct with a minor (A.L.); (2) sexual conduct with a minor (M.L.); (3) child molestation (A.L.); and (4) child molestation (M.L.). All of the counts were alleged as class two felonies and dangerous crimes against children.

**¶4**          After an adjudication hearing, the superior court ruled the State had offered insufficient proof regarding counts one through three but adjudicated Juvenile delinquent as to count four (child molestation of M.L.) and sentenced him to intensive probation, including participation in a sex offender treatment program.  Juvenile timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 8-235(A).

## DISCUSSION

**¶5**          We review *de novo* the sufficiency of the evidence to support a conviction, *State v. Snider*, 233 Ariz. 243, 245, ¶ 4, 311 P.3d 656, 658 (App. 2013), which, for our purposes is the functional equivalent of a delinquency adjudication.  "[A] conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt."  *Tibbs v. Florida*, 457 U.S. 31, 37 (1982); *see also State v. Hickle*, 133 Ariz. 234, 239, 650 P.2d 1216, 1221 (1982) (disagreeing with trial court's determination "no credible, clear evidence" was introduced of premeditation under sufficiency of the evidence analysis).

---

[1]      The forensic interview with Detective B. was not introduced into evidence.  Although portions of the interview were played at the adjudication hearing, those excerpts were not transcribed and are not part of the record on appeal.

¶6        A trial court errs when "the record fails to provide substantial support" for its decision. *State v. Cowles,* 207 Ariz. 8, 9, ¶ 3, 82 P.3d 369, 370 (App. 2004).   Although the term "abuse of discretion" has been aptly described as "unfortunate," the phrase "as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Garza*, 192 Ariz. 171, 175 n.7, 962 P.2d 898, 902 n.7 (1998).   Applying these principles to the case at bar, we conclude the superior court erred by concluding, beyond a reasonable doubt, that Juvenile molested M.L.

¶7        The offense of child molestation requires proof that a person intentionally or knowingly engaged in or caused a person to engage in sexual contact with a child who is under fifteen years of age.   A.R.S. § 13-1410(A).   Sexual contact means "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."   A.R.S. § 13-1401(2).

¶8        The State's case rested on the allegations of five-year-old M.L., whom the prosecutor described as "quite developmentally delayed."[2]  Yet M.L. offered contradictory, internally inconsistent, and, at times, incoherent testimony.   He initially testified as follows when questioned by the prosecutor:

> [State:]  . . . Do you remember telling [Detective B.] that you saw your brother have sex with your sister?
>
> [M.L.:]  No.
>
> [State:]   No, you don't remember?   Do I need to ask that question again?   Did that confuse you?   Okay.   Did you tell [Detective B.] that Dillon had sex with [A.L.]?
>
> [M.L.:]  No.

---

[2]     The superior court conducted a brief pretrial inquiry into M.L.'s competence.   Juvenile has not challenged the determination M.L. was competent, so we do not address it further, other than to note M.L. did not remember he had just promised to "tell the truth" and could not accurately answer several questions posed by the judge and prosecutor.

[State:]  Did you tell [Detective B.] that Dillon ever touched your butt?

[M.L.:]  No.

[State:]  Did you tell [Detective B.] that Dillon touched your pee-pee?

[M.L.:]  No.

. . . .

[State:]  . . . Did you tell [Detective B.] that Dillon put his pee-pee in your butt?

[M.L.:]  No.

[State:]  Did you tell [Detective B.] that it hurt and made you cry?

[M.L.:]  No.

¶9        M.L. also denied ever having spoken to Detective B. The prosecutor followed up by asking:  "You don't remember or it didn't happen?"  M.L. replied:  "It didn't happen."  M.L. similarly denied telling Detective B. that Juvenile had "sex with [A.L.]," though the detective testified M.L. in fact made such a statement to her.

¶10        After the foregoing exchange, the court began addressing an evidentiary issue with counsel and asked M.L.'s "representative" to take M.L. out of the courtroom to get a drink.[3]  Upon M.L.'s return to the witness stand, the following exchange took place:

[State:]  . . . [H]as Dillon ever touched you anywhere that you didn't like?

[M.L.:]  Yes, he has.

[State:]  Okay. Where did he touch you?

[M.L.:]  My privates.

---

[3]        Although the "representative" is not identified in the transcript, the record indicates a victim representative had been appointed for M.L.

. . . .

[State:] . . . Do you remember when Dillon touched you there?

[M.L.:] Uh-huh.  No.

[State:] Do you know if it was last year?

[M.L.:] A long time ago he did.

. . . .

[State:] . . . Did Dillon touch you anywhere else that you did not like?

[M.L.:] Back here.

[State:] Okay.  What do you call that?

[M.L.:] Privates.

[State:] Your private.  Is that the private that you pee out of or that you poop out of?

[M.L.:] Potty out of.

[State:] Okay.  I need you to be a little more specific.  I know this is weird questions, [sic] but I need you to answer so the Judge understands, okay.  So I need you to tell her which private part you are talking about.

[M.L.:] My pee-pee.

[State:] Your pee-pee.  Okay.  And when you pointed to your back, where were you pointing to?

[M.L.:] My butt.

[State:] Your butt. Okay.  And can you tell us what happened when Dillon touched your butt?

[M.L.:] I don't know.

[State:] You don't know.  What did he touch your butt with?

[M.L.:] His hand.

[State:] . . . Did he touch your butt with any other part of his body?

[M.L.:] Pee-pee.

[State:] He touched your butt with his pee-pee. And what do you remember about that?

[M.L.:] I don't know.

[State:] Do you remember what it felt like? I need you to answer out-loud for the Judge.

[M.L.:] No.

. . . .

[State:] . . . Did it hurt?

[M.L.:] No. Yes, a little.

[State:] Okay. Do you remember where it happened?

[M.L.:] What?

[State:] Do you remember where it happened?

[M.L.:] I don't know.

¶11       At times, M.L. offered testimony entirely out of context, including the following exchange:

 [State:] . . . Have you ever seen Dillon touch anybody else like that?

[M.L.:] No.

[State:] No.

[M.L.:] My mom doesn't let me watch adult stuff.

[State:] You are not allowed to watch adult stuff, is that what you said?

[M.L.:] Adults.

[State:] Okay.

[M.L.:] And adults swim.

[State:] Adults swim. You are not allowed to watch adults swim?

[M.L.:] No, I have (indiscernible) stuff like, killing stuff.

¶12 M.L. insisted Juvenile was not present in the courtroom, though he was in fact present for the adjudication hearing. The following exchange then ensued between M.L. and the prosecutor:

[The State:] [M.L.], is your brother Dillon in the courtroom today?

[M.L.:] No.

[The State:] Is he here? Okay. If you stand up -- stand up for me and look over there. Is Dillon over there?

. . . .

[M.L.:] No.

¶13 Despite testifying he did not know "what sex is," M.L claimed Juvenile had "sex" with him "everyday" and stated Juvenile still does so, even though he previously testified Juvenile lives with his grandpa and M.L. is not allowed to see him.

¶14 K.L., the mother of Juvenile M.L., and A.L., testified as a defense witness. She explained that acrimonious divorce proceedings were ongoing at the time M.L.'s claims were reported, and she discussed her ex-husband's dislike of (and alleged abuse of) Juvenile. K.L. suggested her ex-husband and his family had coached M.L. into making the molestation accusations. M.L. agreed that his father (Juvenile's former step-father) did not like Juvenile and was "mean" to him. M.L. was brought to the interview with Detective B. by his father.

¶15 At the adjudication hearing, Detective B. confirmed M.L. was "very developmentally delayed" and testified she "had a very difficult time understanding him" during the forensic interview. Significantly, M.L. told Detective B. that his mother, father, and another individual were present in the room when Juvenile "put his pee-pee in [M.L.'s] butt." The State, however, presented no such evidence. M.L.'s mother specifically denied

witnessing any abuse, and Detective B. testified she was unaware of anyone who had witnessed the alleged abuse.

**¶16** Detective B. testified she had interviewed Juvenile, who denied M.L.'s allegations. She also related that M.L. had accused a 17-year-old babysitter we identify as "T." of touching his "butt" with his "pee-pee" and told the detective that it hurt. However, T. denied the allegations in a telephone call, and M.L.'s accusations against him were not pursued further.

**¶17** The superior court labeled M.L. "a credible witness, not a perfect witness." We typically give great weight to a trial court's assessment of witness credibility. That general rule, though, is not iron-clad. We also recognize that, amidst the denials and contradictory claims, M.L. stated Juvenile had touched his "pee-pee" with his hand and had touched M.L.'s "butt" with his "[p]ee-pee." Proof beyond a reasonable doubt, though, is not established by rote incantation of the elements of an offense. A criminal conviction requires substantial evidence, which is "more than a mere scintilla." *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). Substantial evidence "is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.*

**¶18** Furthermore, M.L. provided inconsistent testimony, so the court could not have found *all* of his testimony to be credible. Not only was M.L.'s testimony internally inconsistent, it lacked detail about the alleged incidents.[4] M.L. also denied ever speaking with Detective B. and could not accurately state whether his brother was present in the courtroom. Such testimony certainly was not credible. M.L. also told the detective his parents had been present when he was molested — a claim unsupported by any evidence and a claim the State never asserted.

**¶19** A cold transcript is admittedly inferior to observing a witness as he testifies. However, the State's case rested almost entirely on M.L.'s contradictory, vague, and at times incoherent testimony. No corroborating

---

4       The superior court dismissed the counts relating to A.L. because M.L.'s testimony lacked sufficient specificity. Yet M.L.'s testimony about his own alleged molestation similarly lacked detail. He testified he witnessed Juvenile putting his "pee-pee" in A.L.'s "butt" and "gina," much as he testified Juvenile touched his "butt" and "pee-pee."

evidence was presented. Given the record in this case, we conclude the State presented insufficient evidence to prove, beyond a reasonable doubt, that Juvenile molested M.L. on or about November 29, 2013, as alleged.

**CONCLUSION**

¶20 "When a conviction is reversed for insufficiency of evidence, the reversal is, in effect, an implied acquittal of the charges. Therefore, double jeopardy precludes retrial." *Peak v. Acuna*, 203 Ariz. 83, 85, ¶ 8, 50 P.3d 833, 835 (2002). For the reasons stated, we reverse Juvenile's delinquency adjudication and resulting disposition.

H O W E, Judge, specially concurring:

¶21 I concur with the Majority's conclusion that the State did not present sufficient evidence to prove beyond a reasonable doubt that Juvenile molested M.L. I write separately, however, because I question whether an appellate court may find evidence of an act of delinquency insufficient because the witness testifying to the act is not credible. I certainly sympathize with—and the record supports—the Majority's view that M.L.'s age, his developmental delays, and the contradictory and confusing nature of his testimony put the credibility of his testimony in serious doubt. But the trial judge—who personally interacted with M.L. and observed his demeanor and heard the tenor of his voice when he testified—found the testimony credible, at least regarding the act of molestation. Because "[n]o rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the [finder-of-fact]," *State v. Cox*, 217 Ariz. 353, 357 ¶ 27, 174 P.3d 265, 269 (2007) (quoting *State v. Clemons*, 110 Ariz. 555, 556–57, 521 P.2d 987, 988–89 (1974)), I question whether an appellate court may consider witness credibility in determining sufficiency of the evidence, *see State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995) (recognizing that "[t]he finder-of-fact, not the appellate court, weighs the evidence and determines the credibility of witnesses").

¶22 In this case, however, we need not resolve whether an appellate court could ever find evidence insufficient for a lack of credibility. Although M.L. testified that Juvenile touched M.L.'s "pee-pee" with his hand or butt, that is not sufficient to prove molestation under A.R.S. § 13–1410. In addition to proving that the charged person engaged in an act of sexual contact with the child victim, the State must also prove that the charged person did so "intentionally or knowingly." A.R.S. § 13–1410(A).

Nothing in the record shows that Juvenile engaged in the act of sexual contact intentionally or knowingly. Although a person's intent or knowledge may be proved with circumstantial evidence, *State v. Harm*, No. 1 CA–CR 13–0737, 2015 WL 157813, at *3 ¶ 13 (Ariz. App. Jan. 13, 2015), the record is devoid of any circumstantial evidence about Juvenile's mental state at any time, much less at the time that he allegedly molested M.L. Without such evidence, the State failed to carry its burden of proving beyond a reasonable doubt that Juvenile intentionally or knowingly engaged in an act of sexual contact with M.L.

**¶23** For these reasons, I agree with the Majority that Juvenile's delinquency adjudication must be reversed for insufficient evidence.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

10