NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAVON COLEON COOPER, *Appellant.*

Nos. 1 CA-CR 24-0350 and 1 CA-CR 24-0351
(Consolidated)

FILED 05-01-2026

Appeal from the Superior Court in Maricopa County
Nos. CR2019-001403-001, CR2021-001972-001
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Deborah Celeste Kinney
*Counsel for Appellee*

Law Office of Randal B. McDonald, Phoenix
By Randal Boyd McDonald
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

---

**C A T T A N I**, Judge:

¶1             Javon Cooper appeals his convictions of first-degree premeditated murder and misconduct involving weapons (prohibited possessor) and the resulting sentences.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2             One evening in June 2018, the victim purchased beer from a convenience store in north Phoenix and then walked south down the road. Cooper drove north past the victim on his way to meet an acquaintance at a restaurant across the road.  Cooper parked and told his acquaintance to wait for him, then walked across the road, leaving his car running.  Cooper came up behind the victim and shot him once.  The victim fell onto the road and, after a few seconds, Cooper shot him again.

¶3             Cooper ran back to his car and drove away.  The victim hobbled across the street as several passersby called 911 and stopped to render aid.  The victim told them that "Coop" had shot him, described Cooper's car, and gave an approximate location where he might be found. Video and limited audio of the incident and aftermath were recorded on a city bus's surveillance system.

¶4             The victim died at the hospital later that evening.  An autopsy showed two gunshot wounds, one entering the victim's left buttock and the other his left thigh.  Each bullet's pathway was directed back to front, left to right, and slightly downward through the victim's body, with the State arguing at trial that the victim was shot from behind unaware.  Either wound could have caused enough blood loss to be fatal.

¶5             The State charged Cooper with first-degree premeditated murder and, in a separate case, misconduct involving weapons (prohibited possessor).  At Cooper's request, the two charges were consolidated for trial.

¶6        Cooper testified at trial, acknowledging that he shot the victim but claiming self-defense.  He also admitted that he was not legally permitted to carry a gun because of a prior felony conviction.  Cooper testified that he knew the victim for about a year before the shooting but cut ties after witnessing the victim commit several violent acts and being threatened by the victim.

¶7        Cooper testified that, when he saw the victim on the day of the shooting, he thought it could be an opportunity to clear the air.  He exchanged nods with the victim while driving past, then called the victim's name to get his attention while walking toward him on the sidewalk.  Although the victim did not turn around, he was responding over his shoulder. Cooper further testified that the victim threatened him and began to turn toward him with a small black revolver in his left hand.  Fearing for his life, Cooper pulled a gun from his pocket and shot the victim, then shot him again after the victim fell but still held his gun.  Cooper testified that, once the victim (who was still alive and mobile) dropped his gun, Cooper ran.

¶8        The jury found Cooper guilty as charged.  The superior court sentenced him to concurrent terms of natural life in prison for first-degree murder and 2.5 years for misconduct involving weapons.  Cooper timely appealed.

## DISCUSSION

¶9        Cooper alleges an array of errors that, he asserts, individually and collectively require reversal.  We conclude otherwise.

## I.        Vindictive Prosecution.

¶10        Cooper argues the superior court erred by denying his motion to dismiss for vindictive prosecution, asserting that the State improperly increased the charge against him from second- to first-degree murder in retaliation for his rejection of a plea offer.  We review this ruling for an abuse of discretion. *State v. Dansdill*, 246 Ariz. 593, 597, ¶ 6 (App. 2019).

¶11        The State originally charged Cooper with second-degree murder.  A different prosecutor was assigned to the case several months later and, after an independent review, determined the evidence supported a finding of premeditation and thus warranted a first-degree murder charge instead.  The prosecutor emailed defense counsel to inform him of the charging decision and concurrently extended an offer for Cooper to plead to second-degree murder with a 20-year prison sentence "if [Cooper] would

like to accept early responsibility." Cooper declined the plea offer, and the State reindicted him on one count of first-degree murder, dismissing the second-degree charge.

¶12 Cooper moved to dismiss the new indictment with prejudice, asserting that the increased charge was imposed as punishment for his decision to exercise his right to go to trial rather than accept the proffered plea deal. The superior court denied the motion as well as Cooper's subsequent motion for reconsideration.

¶13 A prosecutor has broad discretion over charging decisions but may not use that authority to "punish[] defendants for exercising their protected legal rights by subsequently subjecting them to more severe charges." *State v. Mieg*, 225 Ariz. 445, 447, ¶ 10 (App. 2010) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). Absent objective proof of actual vindictiveness, "a defendant may rely on a presumption of vindictiveness if the circumstances establish a 'realistic likelihood of vindictiveness.'" *Id.* at 448, ¶ 11 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). Triggering this presumption requires something more than just increased charges following exercise of a legal right. *Dansdill*, 246 Ariz. at 598, ¶ 8. The defendant must point to additional facts or circumstances that, in combination with the timing of the new charges, support the conclusion that the charging decision "is more likely than not explainable only as an effort to penalize defendant for asserting his legal right." *Id.*; *Mieg*, 225 Ariz. at 448–50, ¶¶ 15, 21.

¶14 Cooper made no such showing here. The record reflects that the decision to charge Cooper with first-degree murder was made before the plea offer was extended, not because Cooper rejected it. Cooper asserts that new charges must be based on new evidence, which was absent here. But increased charges at a pretrial stage may also be based on further evaluation of existing evidence, like the prosecutor's reassessment of whether the bus surveillance video would support a finding of premeditation. *See Goodwin*, 457 U.S. at 381; *see also United States v. Raymer*, 941 F.2d 1031, 1042 (10th Cir. 1991). Although Cooper frames the prosecutor's actions as threatening increased charges only if he rejected the plea offer, the prosecutor's email permissibly reflected a preexisting decision to reindict on first-degree murder accompanied by a plea offer to a lesser charge should Cooper "accept early responsibility." *See Dansdill*, 246 Ariz. at 598, ¶ 9 n.3 ("[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a

defendant would plead guilty to lesser charges proves unfounded.")
(alteration in original) (quoting *Goodwin*, 457 U.S. at 380).

¶15            For the first time on appeal, Cooper suggests that the State's
failure to present evidence of justification to the grand jury supports a
finding of prosecutorial vindictiveness. But any such challenge to the grand
jury proceedings must be presented in a pretrial motion to remand for a
redetermination of probable cause and, if denied, reviewed by special
action before trial. *See State v. Moody*, 208 Ariz. 424, 439–40, ¶ 31 (2004); *see
also* Ariz. R. Crim. P. 12.9(a). Cooper also offers no basis to show the State
had notice that self-defense was in play (or access to any evidence of
justification) when it presented the case to the grand jury.

¶16            Cooper has not shown that the superior court erred by
denying this motion to dismiss.

## II.    Admission and Preclusion of Evidence.

### A.    Victim's Prior Violent Acts.

¶17            Cooper argues the superior court erred by unduly limiting
evidence of the victim's prior acts of violence of which he was aware, which
was relevant to his self-defense claim. We review this evidentiary ruling
for an abuse of discretion. *State v. Fish*, 222 Ariz. 109, 114, ¶ 8 (App. 2009).

¶18            Before trial, the court ruled Cooper could present evidence of
several specific prior acts of violence by the victim, acts that Cooper either
witnessed personally or to which he was himself subjected. Cooper
ultimately testified to all of these acts: the victim brandishing a black
revolver at Cooper after beating up the victim's girlfriend and locking her
in the bathroom; the victim attacking Cooper with a knife and later pointing
a rifle or shotgun at his head and pulling the trigger during a dispute over
$10; and the victim brandishing a black revolver threateningly when
Cooper ran into him at a convenience store a couple of months later.

¶19            The court precluded evidence of other specific acts that
Cooper did not witness (and related propensity allegations), including (1)
the victim's domestic violence against two former girlfriends, (2) the
victim's altercation with a cousin involving a knife, for which both were
arrested but never charged, (3) the victim's girlfriend's mother's statement
that the victim was physically abusive to her daughter, (4) the victim's
girlfriend's mother's allegation that the victim threatened her over the
phone, (5) the victim's propensity for violence when intoxicated, and (6) the
victim's propensity to carry a gun.

¶20　　　　Other-acts evidence is generally inadmissible "to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b)(1).　But, if a defendant claiming self-defense *knew* of specific acts of violence by the victim, such evidence may be admitted to prove the defendant's state of mind—that he "reasonably feared for his safety and used a reasonable degree of force in light of that fear." *Fish*, 222 Ariz. at 121, ¶ 37; *see also State v. Connor*, 215 Ariz. 553, 559, ¶ 14 (App. 2007) (noting that the defendant's knowledge of the victim's violent disposition "may have affected the defendant's thinking about the need to respond with deadly physical force"); Ariz. R. Evid. 404(a)(2).　Evidence of specific acts of violence may also be admissible to prove motive, opportunity, intent, or other non-propensity purposes.　*Fish*, 222 Ariz. at 122–23, ¶ 42; Ariz. R. Evid. 404(b)(2).

¶21　　　　Even if otherwise admissible for a permissible purpose, evidence of the victim's other acts may be precluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See State v. Gentry*, 247 Ariz. 381, 386, ¶ 17 (App. 2019).　The court may consider "the strength of the evidence of the prior violent act, the degree of similarity between the prior violent act and the event at issue, the need for the evidence, whether alternative proof would be effective, whether the prior violent act was recent or remote, and the degree to which the evidence would likely engender hostility in the jury." *State v. Zaid*, 249 Ariz. 154, 158, ¶ 13 (App. 2020).

¶22　　　　Here, the superior court reasonably assessed the proffered evidence and permitted Cooper to testify about the most compelling, most similar incidents.　All involved the victim using a firearm, and at least two involved the victim using a gun to threaten Cooper directly.　As to the precluded evidence, even if Cooper had heard about the victim's domestic violence or his altercation with his cousin, *see State v. Jackson*, 94 Ariz. 117, 120–21 (1963) (noting that the defendant's knowledge of the other acts is sufficient, even without personal observation), the evidence of those acts was comparatively weak (based on multiple layers of hearsay and with limited detail) and the acts themselves were markedly different than Cooper's interaction with the victim.　At the evidentiary hearing on this issue, Cooper never mentioned the victim's girlfriend's mother's allegations about the victim's violence, suggesting either that he did not know of them or that they did not affect his state of mind.　And Cooper testified that, when he crossed the street toward the victim before the first shot, he noticed that the victim "wasn't yet intoxicated," negating the relevance of the victim's reputation for violence when intoxicated.　Finally,

despite the preclusion ruling, Cooper in fact testified at trial about the frequency with which the victim carried a weapon.

¶23        In short, Cooper has not shown reversible error related to the court's ruling on evidence of the victim's other violent acts.

### B.        Cooper's Prior Convictions.

¶24        Cooper asserts that the superior court erred by admitting evidence of his prior felony convictions at trial. Our supreme court has emphasized the potential prejudicial effect of evidence of a defendant's prior felony convictions, cautioning against joining charges that require proof of a prior felony conviction with other charges for trial. *State v. Burns*, 237 Ariz. 1, 14–15, ¶¶ 34–37, 39 (2015). Here, the State charged Cooper with misconduct involving weapons as a prohibited possessor, a charge that required proof of at least one prior felony conviction. *See* A.R.S. §§ 13-3102(A)(4), -3101(A)(7)(b); *see also Burns*, 237 Ariz. at 14, ¶ 34. But it did so in a case separate from the murder charge.

¶25        It was Cooper who affirmatively asked that the two charges be consolidated for trial, his counsel stating that Cooper was "100 percent certain[]" to testify (and be subject to impeachment with his prior convictions, *see* Ariz. R. Evid. 609(a)(1)(B)) and that it would be "less prejudicial" if the State presented the prior felony conviction information in its case in chief. Consistent with that request, Cooper (through counsel) expressly "waive[d] any argument against the presentation of [his] criminal history reference prior felony convictions that pre-date or post-date the date of offense for the current charges and/or for the consolidation of these matters for trial." The State thus presented a redacted document showing Cooper's felony convictions from Ohio during its case in chief.

¶26        The invited error doctrine prevents the source of an alleged error—a party that "engaged in affirmative, independent action to create the error or argue in favor of it"—from obtaining appellate relief based on that basis. *State v. Robertson*, 249 Ariz. 256, 260, ¶¶ 15–16, 18 (2020). To the extent Cooper now argues that admission of the prior felony convictions was improper, he invited any such error and is thus precluded from relief. *See State v. Escalante*, 245 Ariz. 135, 145, ¶ 38 (2018). Moreover, Cooper offers no argument that the prior convictions would not have been independently admissible as impeachment evidence under Rule 609, given his decision to testify at trial. And although Cooper suggests in his reply brief on appeal that the admitted prior felony convictions information was objectionable notwithstanding joinder of the charges and notwithstanding

his decision to testify, he offers no argument delineating what extraneous information was erroneously admitted or how that information was unfairly prejudicial. Cooper has not shown reversible error.

## C. Cooper's Statement to Law Enforcement.

¶27 Cooper argues the superior court erred by denying his request to suppress his statement to detectives, asserting that the statement was elicited after he invoked his right to counsel. We review this ruling for an abuse of discretion. *See State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016).

¶28 After the shooting, Cooper moved to Ohio, where he was later arrested on unrelated charges. Phoenix police detectives interviewed him while he was in custody there. After a few minutes of introductions and discussion about Cooper's background information, Cooper asked, "May I ask what is this about. I don't feel comfortable asking questions with you guys. I'd rather speak to a lawyer. You guys keep asking me questions and I don't know what's going on." The detectives answered that they would tell him what was going on: that they were there about an incident in Phoenix and wanted Cooper's perspective, whether it was self-defense or someone else was involved or he was not involved. Cooper asked, "self-defense of what," and the detectives responded that there had been a shooting and Cooper's "name [was] put into something," but that Cooper could stop the interview at any time. Cooper asked, "my name was put into what," and the detectives responded that it was an incident in Phoenix, but noted that to talk they needed to read his *Miranda* rights and reiterated that Cooper could stop at any time. Cooper responded, "I wasn't involved." A detective then asked if he wanted to know anything about what happened, and Cooper responded, "No, I care not to because I wasn't involved in anything." The detectives then read Cooper his *Miranda* warnings, and the interview proceeded.

¶29 Four days before trial, Cooper moved to suppress his statements during that interview. The State clarified that it only intended to introduce Cooper's statement denying involvement in an incident in Phoenix. The superior court reviewed and summarized the interview on the record, then denied Cooper's motion to suppress. First, the court found that the interaction was a custodial interrogation. The court further found, however, that Cooper's reference to a lawyer was not a clear and unequivocal request for an attorney, noting that Cooper continued to ask questions and engage the detectives, who continued to repeat that Cooper was free to end the conversation. Cooper's statement that he was not involved in anything was volunteered in response to the detectives'

explanatory statements and their offer to provide more information, not in response to questioning designed to elicit an incriminating response.

¶30　　　The Fifth Amendment privilege against self-incrimination includes a right to counsel during custodial interrogation. *See* U.S. Const. Amend. V; *State v. Ellison*, 213 Ariz. 116, 126, ¶ 26 (2006). If the individual subject to interrogation invokes the right to counsel, "all questioning must cease until an attorney is present or the defendant reinitiates communication." *State v. Newell*, 212 Ariz. 389, 397, ¶ 24 (2006). But any such invocation must be unambiguous and unequivocal; "[i]f a reasonable officer in the circumstances would have understood only that the defendant *might* want an attorney, then questioning need not cease." *Id.* at ¶ 25 (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Statements such as "maybe I should talk to a lawyer," *Davis*, 512 U.S. at 462, "I think I might want an attorney," *Ellison*, 213 Ariz. at 127, ¶ 29, or "I think I better talk to a lawyer first," *State v. Eastlack*, 180 Ariz. 243, 250 (1994), have been found insufficient to invoke the right to counsel.

¶31　　　Cooper asserts that he unequivocally invoked his right to counsel by saying "I'd rather speak to a lawyer." But the comment was sandwiched between Cooper's affirmative request for more information ("May I ask what this is about. I don't feel comfortable asking questions with you guys.") and his statement that he did not understand what was happening ("You guys keep asking me questions and I don't know what's going on."). In the context of his affirmative request for further explanation, Cooper's reference to a lawyer was not a clear and unambiguous invocation of his right to counsel. *Cf. Smith v. Illinois*, 469 U.S. 91, 98 (1984) (noting that "the circumstances leading up to the request [may] render it ambiguous"). The superior court did not err by denying suppression on this basis.

### D.　　Autopsy Photographs.

¶32　　　Cooper argues the superior court erred by admitting overly gruesome autopsy photos of the victim, which he asserts had only minimal relevance and posed a significant danger of unfairly inflaming the jury. We review this evidentiary ruling for an abuse of discretion. *State v. Cota*, 229 Ariz. 136, 147, ¶ 45 (2012).

¶33　　　The superior court admitted seven autopsy photographs of the victim: one of the victim's face to show identity, two of the exit wound on the victim's left thigh (one wide shot and one close-up showing the bullet's exit point as distinguished from the incision made during surgical intervention), one of the victim's left groin (post-surgical intervention)

9

showing where a bullet came to rest, and three showing the two entry wounds on the victim's back side (one overall shot and one close up of each wound). The court acknowledged that a few of these photos—particularly those of the exit wound and one bullet's resting place, which showed surgical incisions—could be considered "gruesome" and "fairly graphic," but found them to be probative and not unfairly prejudicial.

¶34        Admissibility of such photographs turns on "(1) the photograph's relevance, (2) its tendency to inflame the jury, and (3) its probative value compared to its potential to cause unfair prejudice." *Id.* at ¶ 46. Photos of the decedent's injuries are relevant because "the fact and cause of death are always relevant in a murder prosecution," even if those issues are not contested. *State v. Chapple*, 135 Ariz. 281, 288 (1983); *State v. Rushing*, 243 Ariz. 212, 219, ¶ 27 (2017). And such photos may be relevant for other purposes, such as "to identify the victim, to show the nature and location of the fatal injury, . . . and to corroborate the state's theory of how and why the homicide was committed." *State v. Morris*, 215 Ariz. 324, 339, ¶ 70 (2007) (quoting *Chapple*, 135 Ariz. at 288). If the photos are relevant to only uncontested issues or otherwise have merely "technical relevance," however, they may "have little use or purpose except to inflame" and thus be inadmissible. *Chapple*, 135 Ariz. at 288.

¶35        Here, the handful of photographs admitted were relevant to identifying the victim and his fatal wounds. In conjunction with the medical examiner's testimony, they also illustrated the pathways the bullets took through the victim's body. This evidence—the location of the entry wounds and the directionality of the bullets' paths—was directly relevant both to the State's theory of how the shooting occurred (shot from behind unaware) and to Cooper's opposing theory of self-defense (positing that the victim had been turning toward Cooper with a gun). And by asking only to "exclude anything that isn't entrance wound, exit wound," Cooper arguably conceded that the most graphic photos (those of the exit wound and the other bullet's resting place, which showed surgical incisions) had more than marginal relevance. Given the photos' relevance to a contested issue, the court did not err by admitting them.

## III.    Jury Instructions.

### A.    *Willits* Instruction.

¶36        Cooper argues the superior court erred by denying his request for an instruction under *State v. Willits*, 96 Ariz. 184 (1964), urging that the police lost or failed to preserve evidence (specifically, the victim's

alleged gun) by failing to promptly secure the crime scene. We review this ruling for an abuse of discretion. *State v. Murray*, 184 Ariz. 9, 33 (1995).

¶37        A *Willits* instruction permits jurors to draw an adverse inference if the State lost, destroyed, or failed to preserve evidence that was potentially helpful to the defendant. *Id.* "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 8 (2014) (citation omitted).

¶38        Here, Cooper failed to prove that delay by the police in securing the crime scene led to loss of evidence. To be sure, Cooper asserted that the victim had a gun when Cooper shot him. But Cooper offers no more than speculation about what happened to any such gun after he fled the scene. Witnesses reported seeing nothing in the victim's hands in the immediate aftermath of the shooting, and responding police officers, who arrived within three minutes after the shooting, reported no weapon near the victim and no witness accounts of firearms other than Cooper's.

¶39        The bus surveillance video showed individuals standing in or near the site of the shooting (across the street from where the victim was receiving medical aid) for more than ten minutes, including an individual bending toward the ground and "persons unknown" moving the victim's beer and sandals onto a nearby wall. Cooper was able to—and did—use this evidence to argue to the jury that someone had removed a gun the victim had during that time. But the record falls short of the proof necessary to show that existing evidence was lost due to the State's inaction as necessary to warrant a *Willits* instruction. *See, e.g.*, *State v. Hernandez*, 250 Ariz. 28, 33, ¶ 16 (2020) (limiting preservation obligation under *Willits* to evidence that "is 'obviously material' when, at the time the state encounters the evidence during its investigation, the state relies on the evidence or knows the defendant will use the evidence for his or her defense").

### B.        Crime Prevention Justification.

¶40        Cooper asserts that the superior court erred by failing to sua sponte instruct the jury on use of force in crime prevention as a justification defense. Cooper did not request such an instruction or object to its omission, so we review only for fundamental, prejudicial error. *Escalante*, 245 Ariz. at 142, ¶ 21.

¶41        Cooper disclosed only self-defense (and, for a time, necessity) as his theory of justification. And he never requested instruction on any

justification other than self-defense. Although the superior court is obligated to "properly instruct the jury on the elements of the charged offenses and on reasonable doubt, there is no sua sponte duty to instruct the jury on justifications that the defendant does not request." *State v. Brown*, 258 Ariz. 270, 275, ¶ 21 (App. 2024); *see also id.* at 275–77, ¶¶ 25–30. Cooper has not shown error.

## IV. Sufficiency of the Evidence.

**¶42** Cooper argues that the State failed to present sufficient evidence of premeditation, suggesting that the evidence instead showed a verbal altercation, the victim holding a gun and turning toward Cooper, and Cooper not aiming to kill. We review sufficiency of the evidence de novo, assessing whether the evidence (both direct and circumstantial) was such that a rational factfinder could find guilt beyond a reasonable doubt. *See State v. West*, 226 Ariz. 559, 562, ¶¶ 15–16 (2011).

**¶43** Premeditated first-degree murder, as charged here, requires proof that, "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation." A.R.S. § 13-1105(A)(1). "'Premeditation' means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection." A.R.S. § 13-1101(1); *State v. Thompson*, 204 Ariz. 471, 479–80, ¶ 32 (2003); *see also State v. Boyston*, 231 Ariz. 539, 551, ¶ 60 (requiring "actual reflection and more than mere passage of time").

**¶44** Here, Cooper testified that he did not intend to kill the victim and "just reacted" when he saw the victim turning with a gun, believing his life to be in danger. But other evidence permitted the jurors to draw a different conclusion. *See State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2007). Although Cooper described it differently, the video evidence showed Cooper crossing the street behind the victim, increasing his speed to catch up without any apparent reaction from the victim, then shooting the victim from behind. After the victim fell into the street, Cooper stepped toward him and, after several seconds, shot him from behind again. Although the jury was not compelled to reach that conclusion, it could permissibly infer intent and sufficient reflection showing premeditation. *See State v. VanWinkle*, 230 Ariz. 387, 392, ¶ 16 (2012).

**V.      Post-Judgment Ruling on Alleged Juror Misconduct.**

¶45          Cooper asserts the superior court erred by denying his post-judgment request for relief alleging juror misconduct.   The prosecutor reported overhearing one of the trial jurors, who was in or near the courtroom just after sentencing, telling the victim's family of her confidence in the guilty verdict, stating that "they looked [Cooper] up" and that she knew "he had done 'this' before in Ohio."   Cooper filed a motion to vacate judgment asking the court to release the juror's name and contact information to permit investigation into potential juror misconduct.   The court released the juror information to the parties but declined to vacate judgment at that time.   Cooper then timely appealed from verdicts and resulting sentences.

¶46          Almost eight months later, Cooper filed a self-represented post-judgment motion seeking a new trial and raising (among other issues) potential juror misconduct.   Cooper's appellate attorney later filed a supplement seeking an evidentiary hearing, asserting that new evidence suggested the jurors may have impermissibly looked up Cooper's criminal history and engaged in an improper reenactment during deliberations. The superior court denied the post-judgment motion as supplemented, concluding that new evidence did not establish juror misconduct.  Cooper did not separately appeal from that ruling.

¶47          Cooper now argues that the superior court erred by failing to vacate the conviction, or at least hold an evidentiary hearing, based on what he claims is evidence of serial juror misconduct.   We lack jurisdiction to consider this argument, however, because Cooper appealed only from the judgment and sentence, not from the later ruling on his post-judgment motion.

¶48          The superior court's ruling on a post-judgment request to vacate judgment is separately appealable. *See State v. Wynn*, 114 Ariz. 561, 563 (App. 1977); *see also* A.R.S. § 13-4033(A)(3).  By rule, a notice of appeal from that ruling is due "no later than 20 days after entry of the decision." Ariz. R. Crim. P. 24.2(d).  Timely appeal from the judgment of conviction and sentence vests this court with jurisdiction to review "all *pre-judgment* rulings or orders necessarily affecting that judgment" because such rulings are "interlocutory and non-final, . . . interwoven with, and indispensable to, the ultimate judgment of conviction." *See State v. Sanchez*, CR 23-0270-PR, 2024 WL 938080, at *1 (Ariz. Mar. 5, 2024) (emphasis added).  The ruling on a *post-judgment* request to vacate judgment, in contrast, is necessarily separate from and does not become a part of the preexisting and already-

final judgment.  *See* Ariz. R. Crim. P. 24.2(b); *State v. Hickle*, 129 Ariz. 330, 332 (1981).  Appeal from the judgment itself thus does not provide this court with appellate jurisdiction to review the court's separately appealable post-judgment ruling.

**¶49**        We lack jurisdiction to consider Cooper's challenge to the post-judgment ruling regarding alleged juror misconduct.  Accordingly, we do not address it.

## CONCLUSION

**¶50**        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR