NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW MICHAEL YOUNG, *Appellant.*

No. 1 CA-CR 17-0328
FILED 4-12-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-005474-001
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge James B. Morse Jr. joined.

---

**S W A N N**, Judge:

**¶1**          This is an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), from Andrew Michael Young's conviction for assault and the court's imposition of probation. Neither Young nor his counsel identify any issues for appeal. We have reviewed the record for fundamental error. *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. 738; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). We find none.

**¶2**          A grand jury indicted Young for assault of T.I., as a class 2 misdemeanor under A.R.S. § 13-1203(A)(2). Young pled not guilty, and the matter proceeded to a bench trial.

**¶3**          At trial, the state presented evidence of the following facts. On the evening of November 25, 2015, teenaged J.M. drove three of his teenaged friends — T.I., J.B., and T.W. — through an Anthem neighborhood on a golf cart. The group was talking and laughing but not yelling, and they exclaimed when J.M. made a sharp turn to take the cart to a neighborhood park. The cart may have gone onto the sidewalk when J.M. made the turn, and he briefly drove on the sidewalk to avoid a street gutter. But he did not drive on any private property, and the group did not see any residents outside of the houses they passed.

**¶4**          At the park, J.M. drove the group in donuts on the grass. After only a few minutes, however, he stopped because he saw the headlight of an approaching dirt bike. The teenagers initially assumed that the driver was J.M.'s stepfather. But it was Young, the owner of a house near the path that the group took to the park. Young stopped his bike on the grass directly in front of the cart, dismounted, and began yelling and cursing. He accused the teenagers of having intruded on his property, asked where they lived, demanded to talk to their parents, and made a statement to the effect either that they were lucky he had not shot them or that he would shoot them if they returned. And when T.I. stepped off the back of the golf cart, Young pinned him to the ground face-first, bending

T.I.'s arm behind him and placing his knee on T.I.'s back. Young released T.I. after one of the other teenagers told him that T.I. was a minor and J.M. promised to show him to J.M.'s house. T.I. climbed back onto the golf cart, and J.M. drove the cart to his house with Young following on his bike. T.I. and J.B. went to J.B.'s nearby house, either getting dropped off by J.M. or walking from J.M.'s house.

¶5 At J.M.'s house, Young spoke briefly to J.M.'s stepfather. Young told the stepfather that the teenagers had been driving donuts in the park. He made no mention of any driving on his property, or of his physical contact with T.I. The stepfather told Young that he would handle the situation, and Young left.

¶6 Meanwhile, at J.B.'s house, J.B. told others what had happened to T.I., and T.I. began crying from shock and pain. Not long thereafter, all of the teenagers' parents were apprised of the situation and they assembled with their children at J.M.'s house. The adults soon decided to call law enforcement, and a sheriff's deputy promptly responded to J.M.'s house. The deputy spoke to each of the teenagers separately and had them provide individual written statements. Each recounted that Young had pinned T.I. to the ground. J.M., who had recognized Young from the neighborhood, showed law enforcement to Young's house and made an in-person identification.

¶7 Other deputies interviewed Young and Young's wife. Young's wife reported that she had been outside the couple's residence that evening and had seen the golf cart drive onto the driveway. She heard the occupants yell that they needed to leave before they got shot. She went inside the house and told Young what had happened. According to Young, he looked outside and saw that the golf cart was driving at the nearby park. Young stated that he confronted the teenagers at the park and one of them approached him, but he did not touch any of them.

¶8 Young moved for a judgment of acquittal under Ariz. R. Crim. P. 20. The court denied the motion.

¶9 For his case, Young presented his and his wife's testimony. Both testified consistently with what they had told law enforcement. Young added that he was a police officer with no disciplinary record and, though not on duty at the time, could have arrested T.I. He also testified that the take-down technique the teenagers described was not one in which he was trained. He finally testified that his police department was aware of the assault charge, but the consequences of a conviction would be up to

his superiors and it was his understanding that a conviction would not negatively impact his career.

¶10　　　The court found Young guilty as charged, suspended the imposition of sentence, and imposed four months of unsupervised probation. Young timely filed a notice of appeal.

¶11　　　We find no fundamental error. Young was present and represented at all critical stages. He was properly afforded a bench trial. *See Derendal v. Griffith*, 209 Ariz. 416, 425, ¶ 37 (2005); A.R.S. §§ 13-1203(A)(2), (B), -707(A)(2). And the evidence was sufficient to support his conviction. A person commits assault under A.R.S. § 13-1203(A)(2) if he or she "[i]ntentionally plac[es] another person in reasonable apprehension of imminent physical injury." The state presented substantial evidence that Young intentionally placed T.I. in reasonable apprehension of imminent physical injury. The teenagers all testified that Young drove directly to them, yelled and cursed at them, accused them of intruding on his property, and made a statement about shooting them. Moreover, according to the teenagers, Young pinned T.I. to the ground, immobilized T.I.'s arm, and placed his knee on T.I.'s back. The teenagers' credibility was for the court to decide. *State v. Hickle*, 129 Ariz. 330, 331–32 (1981).

¶12　　　We note that the prosecutor, in closing argument, characterized Young's testimony that a conviction would not harm his career as "just flat out . . . not the truth" and "simply not true," because it "could have drastic consequences on his career, the officer integrity list, and things of that nature . . . and it could be devastating to his career." Counsel is afforded considerable latitude in closing argument, and may draw reasonable inferences from the evidence, including, in some circumstances, the characterization of the defendant as a liar. *State v. Miniefield*, 110 Ariz. 599, 602 (1974); *see also United States v. Poole*, 735 F.3d 269, 276–78 (5th Cir. 2013). Here, however, the prosecutor's criticism of Young's testimony was not supported by any evidence. But even if the prosecutor's statements constituted prosecutorial misconduct, they did not rise to the level of misconduct requiring reversal. *See State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (holding that reversal for prosecutorial misconduct is warranted only when the misconduct, viewed cumulatively, "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial" (citations omitted)).

¶13　　　We affirm Young's conviction. We also affirm the probation term, which was proper under A.R.S. §§ 13-1203(A)(2), (B), -901(A), and

-902(A)(6). Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Young of the status of this appeal and his future options. *Id.* Young has 30 days from the date of this decision to file a petition for review *in propria persona*. *See* Ariz. R. Crim. P. 31.21(b)(2)(A). Upon the court's own motion, Young has 30 days from the date of this decision in which to file a motion for reconsideration.



AMY M. WOOD • Clerk of the Court
FILED: AA